## The inhabitants of CLINTON vs. FLY.

By contract in writing between the inhabitants of the town of C. and one A. R., it was agreed on the part of the latter, that he would suitably maintain his father and mother, and an idiotic brother, during their natural lives; for which, the said inhabitants agreed to give him the use and occupancy of a certain farm, during the lives of the father and mother, and at their decease, to give him a deed, conveying all the right, title and interest of said inhabitants in the same. *Held,* that the contract was not *assignable;* it not having been made with A. R. and *his assigns,* and creating, as it did, a *personal trust.*

THIS was a writ of entry, in which the demandants counted upon their own seizin, and upon a disseizin by the tenant. The general issue was pleaded and joined. The defendant admitted that he was in possession of the demanded premises, and claimed to occupy them in virtue of an agreement made between the plaintiffs and *Abraham Roundy, Jr.,* and an assignment of the same by the latter, to the tenant.

The contract was as follows, *viz.:* "Memorandum of an "agreement made the 3d day of *Nov.* 1827, between *Abra-* "ham *Roundy, Jr.* of the one part, and *Thomas Brown, Jo-* "seph *Clark,* and *Hobart Richardson,* duly authorized by the in- "habitants of *Clinton* at the annual meeting for this purpose, "on the other part — witnesseth — The said *Abraham Roundy,* "Jr. agrees and engages on his part, to support and suitably "maintain, his father, mother, and brother *David,* during their "natural lives, in consideration of the covenant hereinafter ex- "pressed, *viz.:* The said *Brown, Clark* and *Richardson,* in "behalf of said inhabitants, agree that said *Abraham* shall "have the occupancy and income of that part of the farm on "which he now lives and occupies, and which the said inhabi- "tants have by deed or lease, and at the decease of his father "and mother, shall have a deed conveying all the right, title "and interest the inhabitants of said town now have by deed "in the farm aforesaid, provided he shall maintain the persons "aforesaid.

"The parties further agree, that at the expiration of two "years from this date, two suitable men shall be selected to de-

" cide and say what sum of money in addition to the income " of the farm, the said *Abraham* shall receive. The men se- " lected shall also say, what sum of money the said *Abraham* " shall pay the said town for the farm if his father and mother " shall decease prior to two years. And it is also agreed that " every two years, so long as the said *Abraham's* father and " mother shall live, this agreement shall be adjusted as provid- " ed above. It is also agreed that the overseers of the poor for " the time being, shall allow the said *Abraham*, what they may " think necessary to aid him in the support of the family afore- " said.

" *Abraham Roundy, Jr.*

" *Hobart Richardson,*

" *Thomas Brown,*

" *Joseph Clark.*"

This agreement, in *Feb.* 1829, for a valuable consideration, was assigned by *A. Roundy, Jr.* to the defendant.

But it was insisted by the counsel for the demandants, that the defendant could derive no interest from the agreement, it not being assignable in its character. But *Weston J.* intending to reserve the question, and for the purpose of settling other facts in the cause, overruled the objection.

It appeared that the elder *Roundy*, with his family, had for many years lived in the house and on the farm demanded in this action, which he had formerly owned, but which, prior to the agreement aforesaid, he had conveyed to the demandants. Pro- vision had been made by the defendant for the support of *Roundy* and his family at that house ; but he becoming dissatisfied with the defendant, who with his family resided in the same house, on the 13*th of Nov.* 1829, removed with his family to another place ; where assistance has been afforded them by the demand- ants ; who called upon the tenant to support the *Roundys* at their new residence, and to refund to the demandants, the ex- penses by them incurred, which he declined doing.

It was insisted by the counsel for the demandants, that the tenant was bound to support the *Roundys* where they chose to reside, or the demandants chose to have them reside, if no needless expense was incurred. But for the purposes of that

trial the Judge instructed the jury that it was a fulfilment of the tenant's duty under the contract, if he supported, or was ready to support and suitably maintain the elder *Roundy*, his wife and son *David* at the house on the demanded premises.

It appeared that prior to the bringing of this action, the demandants had notified the tenant that, the same would be brought, unless the tenant would enter into a personal and express contract to do what *Roundy, Jr.* had undertaken.

If the contract before mentioned was not in the opinion of the whole Court assignable ; or if the tenant was bound to support the *Roundys* where they chose to reside, or the demandants chose to have them, if no needless expense was incurred ; the verdict, which was for the tenant, was to be set aside and the tenant to be defaulted — unless the Court should be of opinion that the demandants before the commencement of their action, should have called upon the tenant to give up the premises, and that the notice before stated, was not sufficient for this purpose.

*R. Williams* and *Wells*, for the demandants.

1. The contract was not assignable. If in its nature it could be so, it contains no words imparting such a quality. But it is not assignable, because the trust thereby reposed in *Roundy, Jr.* was a *personal trust.* It is no more assignable than indentures of apprenticeship, to which it may be likened. *Hall v. Gardiner & al.* 1 *Mass.* 171 ; *Davis v. Coburn*, 8 *Mass.* 299.

These cases are analogous in principle to the one under consideration. *Roundy, Jr.* was probably selected for this purpose by the Selectmen of *Clinton*, on account of his personal qualifications. The trust is personal, and can no more be assigned than the trusts of a guardian or trustee. *Bac. Abr. tit. Assignment.* Or of a license to cut timber on another's land. *Emerson v. Fiske*, 6 *Greenl.* 200.

2. The demandants had a right to say *where Roundy* and his family should be supported. *Wilder v. Whittemore*, 15 *Mass.* 262 ; 5 *Dane's Abr.* 498.

If *Roundy, Jr.* or his assignee claimed the right of maintaining the elder *Roundy* and family at any particular place, they

should have secured such right in the contract. The law in no other case will permit the obligor to say *where* his contract shall be performed; and there is no reason why this should be considered an exception.

3. The defendant can derive no title under the contract, even if it be assignable. It cannot be construed to be a lease for years, for it has no certain *ending*. *Co. Litt.* 46, *a.* If it create a tenancy at will, then the assignment would terminate it. *Co. Litt.* 57, *b.* It is neither a deed or lease, and conveys no interest in the land. *Roundy, Jr.* could not have maintained trespass against any one, even though he had performed all the conditions of his agreement.

4. The demand was sufficient before bringing the suit. *Porter v. Hammond,* 3 *Greenl.* 188.

*Boutelle* and *Sprague,* for the tenant.

1. The contract is assignable. There is nothing in the case showing that it was a mere *personal* trust in *Roundy, Jr.* No more so than it is in the case of overseers of the poor. The contract was merely *to support.* It had nothing to do with *instruction,* moral or otherwise. And therein it is wanting in any analogy to the case of indentures of apprenticeship. In the latter, the skill of the master, his aptitude at instruction, his moral character, &c. would all be taken into consideration when entering into the contract. But in the case under consideration, the expenditure of one's substance for the support and maintenance of the family was all that was contemplated.

2. But if the contract be not assignable, still it is not competent for the demandants to avail themselves of that circumstance in this action. 7 *T. R.* 454; 3 *Keeble,* 319; 1 *Ld. Raym.* 683; 1 *Strange,* 10.

The objection has been *waived* by the demandants. They not only made no objection to the assignment, but asked the defendant to take upon him the same obligation that *Roundy, Jr.* had assumed.

3. The defendant had a right to say *where* the elder *Roundy* and his family should be supported. They were *paupers.* There is a provision in the agreement that the *overseers of the*

*poor* for the time being should provide support, &c. Now if a person contract to support the poor of a town, has he not a right to select his own place for doing it?

4. In this case there has been neither *entry* nor *notice*. The case finds, it is true, that *prior* to the bringing of the suit notice was given to the defendant. But this is not sufficient. It might have been given only *one hour* before bringing the suit; which would be insufficient, the defendant being entitled to a *reasonable time*.

The opinion of the Court was delivered by

Weston J. — The elder *Roundy* had conveyed the farm in controversy, then his property, to the demandants. It does not appear that any trusts were declared, or that the demandants had entered into any express stipulations with *Roundy* on their part. From the course pursued by them, they appear to have understood that the property was designed to be appropriated to the support of *Roundy*, their grantor, and his wife, both advanced in years, and of *David*, their son, who was idiotic and helpless. The demandants confided to *Abraham Roundy, Jr.* another son, the charge and obligation, of maintaining his father and mother, and brother, for which he was to have the income, and ultimately the fee, of the farm in question.

It has been found that property best serves the uses and purposes for which it is designed to give it an assignable character, and there are very few interests, possessing an exchangeable value, to which the law does not annex this quality. But there are exceptions, where an interest has been acquired upon the ground of personal confidence. Of this kind are indentures of apprenticeship, where a delicate trust, affecting the morals, character and happiness of the apprentice, is confided. And we are constrained to regard the contract made with *Roundy, Jr.* under whom the tenant claims, as falling within the same principle. The relation in which the parties stood, and the nature of the duties to be performed, very clearly show that there were reasons for the selection by the demandants of the son, in the contract made, which could not apply to a stranger. It was suitable and proper that the happiness and comfort of the

old people and their unfortunate child, should be consulted. It is fair to presume that it would be most acceptable to them to be supported by a member of their own family. If the contract is held assignable, they are liable to be transferred, at the convenience and pleasure of successive assignees, whether they possess or not, the temper and qualities, which would enable them satisfactorily to fulfil the trust. The contract was not made with *Roundy, Jr.* and his assigns ; and creating, as we think it did, a personal trust, we cannot regard it as assignable. The verdict is accordingly set aside.

*Tenant defaulted*