[Decided June 29, 1893.]

## THOMAS v. THOMAS.

[S. C. 33 Pac. Rep. 565.]

1. EQUITY — ASSIGNABILITY OF CONTRACT FOR SUPPORT BETWEEN FATHER AND SON — FORFEITURE.— Where a son, as a part of the consideration for a deed from his father, agrees to give the latter an annuity, and a home on the land granted, he cannot, without the father's consent, convey the land to another, even if the latter agree to perform the son's covenant, since the obligation of the son is personal; and such a conveyance works a forfeiture of the son's estate.

2. TAXATION OF COSTS — CODE, § 557.— Under section 557 of Hill's Code it is the duty of the trial court to make findings of fact upon each item of costs in dispute, and this must be done before the appellate court can consider the correctness of the taxation.

Union County: MORTON D. CLIFFORD, Judge.

The object of this suit is twofold — *First*, to cancel and set aside a conveyance of certain lands by the plaintiff, Israel Thomas, to his son S. K. Thomas, and the deed from S. K. Thomas to his co-defendant, Delaney; *second*, for a decree making the deferred payments upon certain

other lands sold by the plaintiff to the defendants a lien upon the lands. From the pleadings and the evidence upon the first cause of suit it appears that on January 5, 1889, the plaintiff, who was then about seventy-five years old, and without any one to care or provide for him in his old age, being desirous of distributing his property among his children, and providing for his own support and maintenance during his life, conveyed the property in controversy, upon which he then resided, to his son Squire, one of the defendants. The consideration, as stated in the deed, was two thousand dollars, but the real consideration was an agreement on the part of Squire to pay four of plaintiff's other children the sum of two hundred dollars each, in accordance with the terms of his promissory notes therefor, executed and delivered to plaintiff, and an agreement in writing, executed contemporaneously with the deed, and forming a part of the same transaction, by the terms of which Squire covenanted and agreed with plaintiff to furnish him a home and support on the land so conveyed, so long as he might live, and to pay him two hundred dollars as an annuity during his life. The several sums evidenced by the promissory notes drawn in favor of plaintiff's children were intended by him at the time of the conveyance as gifts or advancements to his children, but none of the notes have ever been delivered to the persons for whom intended, although the defendant paid to the payee of one of them the sum of one hundred and forty dollars, obtained the note from plaintiff and canceled and destroyed the same. The remainder of the notes were brought into court by the plaintiff for the purpose of being surrendered up and canceled.

From the time of the execution of the deed and agreement up to December 30, 1890, plaintiff and his son continued to reside together on the farm, and the latter substantially fulfilled the agreement on his part, except that he paid only thirty-five dollars on the annuity. On

that date he sold and conveyed the farm to defendant Delaney for the sum of four hundred dollars in money, and an oral agreement on the part of Delaney to pay the notes in favor of plaintiff's children when the same should become due, and to support and maintain plaintiff on the farm during his life. On January 21, 1891, plaintiff learned, for the first time, as he claims, of the conveyance to Delaney, and brought this suit to set aside and cancel the deed to his son, and the deed from his son to Delaney, alleging, among other things, that his son had failed and neglected to pay either or any of the annual installments, or any part thereof, except the sum of thirty-five dollars, and that the deed to Delaney was made without his knowledge or consent, and for the purpose of cheating and defrauding him out of his home, and offering in the complaint to return the one hundred and seventy-five dollars paid on the consideration for the deed. A decree was rendered in plaintiff's favor in the court below, on the referee's report of A. S. Laurence, Esq., from which defendants appeal. Modified.

*Chas. H. Finn*, for Appellants.

Even admitting the allegations of hardship, the age of the grantor, and his illiteracy, yet in the absence of allegations and proof that the grantor was not possessed of his faculties, was not imposed upon, or that he did not sell the property for less than its real value, a court of equity has no power to set aside the deed or rescind the contract. Neither courts of law nor of equity have the right to enforce mere moral obligations: *Sobranes* v. *Sobranes*, 31 Pac. Rep. 910; *Ralston* v. *Turpin*, 129 U. S. 675; *Saufley* v. *Jackson*, 16 Tex. 581. For the relief sought in this suit plaintiff might maintain an action of ejectment or suit charging a lien on the land, but a rescission of the contract or forfeiture of title is not the relief or proper method. No fraud is alleged in this cause to induce the deed sought to be

avoided, nor was the same alleged to have been obtained through the mistake or any accident on the part of the plaintiff grantor: *Watson* v. *Smith,* 7 Or. 454.

Either the deed itself or some contemporaneous writing accompanying the same and construed to be part of said conveyance must explicitly provide the right of reëntry upon condition broken; and unless such provision appears in the writing in clear terms, such as "on condition," "providing always," "if it appears," "if it shall appear," etc., the land cannot be compelled to revert — the remedy is for damages for the failure of condition on or for the condition unbroken: *Berkely* v. *Union Pac. Ry. Co.* 33 Fed. Rep. 794; *Coffin* v. *City of Portland,* 16 Or. 77; *Raley* v. *Umatilla Co.* 15 Or. 174; *Portland* v. *Terwilliger,* 16 Or. 465; *Mays* v. *St. Louis, etc.* 21 N. E. Rep. 487.

What is such a contemporaneous contract as to control a deed? Contract prior to the execution of the deed is not a contemporaneous one, and will not affect the deed unless the deed expressly refers to it and its terms: *Douglas* v. *Mut. Life Ins. Co.* 20 N. E. Rep. 52; 127 Ill. 101.

Restrictive clauses in a deed or contemporaneous contracts create covenants running with the land simply, and are not conditions subsequent: *Past* v. *Wells,* 22 N. E. Rep. 144; 115 N. Y. 361; *Same* v. *Bernheimers,* 22 N. E. Rep. 149; 115 N. Y. 664.

*Robert Eakin,* for Respondent.

MR. JUSTICE BEAN delivered the opinion of the court:

1. A careful examination of the question has satisfied us that the decree, so far as the first cause of suit is concerned, should be affirmed. The contract of the defend-ant, S. K. Thomas, to give his father a home and support upon the land, as a part of the consideration for the conveyance, was a personal obligation, to be performed by him alone, and could not be assigned, without the consent

of the father, so as to substitute some other person in his
place. The principal consideration for the deed to the
son was the support and maintenance of the plaintiff upon
the farm during his old age, by one of his own flesh and
blood, and not by a stranger. His object was to have
his son reside with and take care of him during the
remainder of his life, on the premises conveyed. This
was the motive which prompted him to make the convey-
ance, and the condition upon which it was accepted. The
sale of the land by the son puts it out of his power to
comply with the condition upon which he was to receive
the title, and utterly defeats the object sought by plaintiff
in making the conveyance, and therefore works a forfeit-
ure of the estate. Any other rule would destroy the very
purpose of the grant, and render the grantor dependent
for his support and maintenance upon the pleasure and
convenience of successive assignees, whether agreeable to
him or not. Nothing can be more effectual, in securing
the faithful performance of a contract of this kind, than
the right of the parent to revest the entire estate in him-
self upon a breach by the son, in putting himself in a
position where he is unable to comply with his contract.
The rule which holds the child to a strict performance of
his part of the contract, and gives the parent the right to
recall the gift if he fails, is founded upon obvious princi-
ples of justice and right, and is the only rule, it seems to
us, which will preserve the rights of a parent who enters
into a contract of the character now under consideration.
The books abound in illustrations of the distressing family
discords and lawsuits which seem almost invariably to
spring from a disregard of the advice of the son of Sirach:
" Give not thy son and wife, thy brother and friend, power
over thee while thou livest, and give not thy goods to
another, lest it repent thee, and thou entreat for the same
again. As long as thou livest and hast breath in thee,
give not thyself over to any. For better it is that thy

children should seek to thee, than that thou shouldst
stand to their courtesy. In all thy works keep to thyself
the pre-eminence, leave not a stain in thine honor. At
the time when thou shalt end thy days and finish thy
life, distribute thine inheritance": Ecclesiasticus, xxxiii:
19–23. And the courts have always been zealous in
demanding and requiring a strict performance by the
child, and to that end have held that the duty to support
the parent under a contract of this kind is a personal one,
and cannot be transferred to a third person without the
consent of the parent, and an attempt to do so gives the
parent the right to revest the entire estate in himself.

In *Clinton* v. *Flye*, 10 Me. 292, (which was a writ of
entry brought against the defendant as assignee of one
Roundy), a contract had been made by the plaintiff and
Roundy, by which it was agreed that Roundy should sup-
port and maintain his father and mother and an idiotic
brother during their natural lives, for which the plaintiff
agreed to give him the use and occupancy of a certain farm
during the lives of the father and mother, and at their
death to give him a deed to the land. It was held that
the contract was a personal trust, unassignable, and the
plaintiff recovered the land from Roundy's grantee, the
court saying: "If the contract is held assignable, they
(the persons to be supported) are liable to be transferred,
at the convenience and pleasure of successive assignees,
whether they possess, or not, the temper and qualites
which would enable them satisfactorily to fulfill the trust."
So, also, in *Flanders* v. *Lamphear*, 9 N. H. 201, the plain-
tiffs gave a deed to their son, and he gave back a mortgage
conditioned for the support of the grantors during their
natural lives, and to pay sundry debts of the father.. Sub-
sequently, the son conveyed the premises to a third per-
son, and they were again transferred so that Lamphear,
the defendant, had them by mesne conveyance from the
son. The plaintiffs then brought a writ of entry agaiı st

Lamphear, and it was decided that it could be maintained unless it could be shown the conveyance of the son was made with the consent of the plaintiffs. In *Eastman* v. *Batchelder*, 36 N. H. 141, Batchelder gave a deed of his real estate to Trasker, his son-in-law, upon the condition and consideration that he and his wife should be supported on the premises during their lives by Trasker, the object being to have their daughter and her husband reside with and take care of them in their old age. On a bill in the nature of a suit to redeem, and to be let into possession, brought by the purchaser of Trasker's right at an administrator's sale of his estate, it was held that, although he offered to perform the conditions of the contract, the suit could not be maintained, because the contract for the support of Batchelder was personal to Trasker, and could not be performed by his assignee, and that neither Trasker nor the administrator of his estate could transfer the premises and his responsibilities, nor could his creditors, before his decease, have deprived him of the land, and retained it against Batchelder. To the same effect are *Bryant* v. *Erskine*, 55 Me. 153; *Bethlehem* v. *Annis*, 40 N. H. 34; Jones, Mortgages, §§ 388, 392; *Daniels* v. *Eisenlord*, 10 Mich. 454.

It was claimed at the argument that the sale to Delaney was made with the knowledge and acquiescence of the plaintiff, but in our opinion the evidence fails to sustain the contention. Plaintiff testifies that the first knowledge or information that he had of the sale, or contemplated sale, was from Delaney, after the deed had been made, and but a few days before this suit was commenced. The only evidence to the contrary is the testimony of the two defendants who are to be benefitted by the sale, if sustained, and their evidence is only to the effect that the contemplated sale was talked over by them in the presence of the plaintiff, and he made no objection thereto; but they do not testify that he was ever consulted about the matter, or

knew anything about the terms and conditions upon which the sale was to be made, or that he ever agreed or consented that it might be made, and the obligation of his son transferred to Delaney. Upon this evidence the court would not be justified in holding that the transfer was made with his consent.

The second cause of suit is to enforce a grantor's lien for the unpaid purchase price of certain land sold and conveyed by plaintiff to the defendants jointly, the consideration for which was evidenced by promissory notes payable to certain of plaintiff's children, but never delivered by him. The first of these notes matured January 1, 1890, and was paid before the commencement of this suit. The second note became due on January 1, 1891, and while it was not paid at the commencement of this suit, the evidence shows that defendants made every reasonable effort to pay it, by tendering and offering to pay the same to both the plaintiff and the payee named therein. The other notes were not due at the time this suit was commenced, and hence there was no default on the part of the defendants; and as to this cause of suit the complaint must be dismissed, conceding, but without deciding, that the doctrine of a grantor's lien prevails in this state.

2. There is also an appeal from the action of the court below on a motion for the retaxation of costs. After issue joined, this cause was referred to a referee for trial, and a stenographer appointed by the court to take the testimony under his direction. The referee charged for seven days' services in hearing the testimony and arguments of counsel, and one and one half days' for the examination of the case and the preparation of findings, at twenty dollars per day, making a total of one hundred and seventy dollars, one half of which is alleged to have been actually paid by plaintiff and is included in his cost bill as filed. The stenographer charged for six days' services in taking testimony at ten dollars per day, and fifteen cents a folio for

transcribing five hundred folios of testimony, and ten
cents a folio for two copies thereof, making a total of one
hundred and eighty-five dollars, of which eighty-four dol-
lars and fifty cents is alleged to have been actually paid
by plaintiff, and is included in the cost bill.   Objections
were filed by the defendants to the allowance of sundry
items of the cost bill, and particularly to the items for
referee's and stenographer's fees, which objections were
overruled by the clerk.   On a motion to retax the costs
the court below allowed for the services of the referee
forty-two dollars and fifty cents, being one half of his com-
pensation, at the rate of ten dollars per day, and for the
stenographer sixty-seven dollars and fifty cents, being one
half of his fees as allowed by the court below.

It appears from the objections to the cost bill, and
affidavits in support thereof, that the objection to the
allowance of the items for referee's and stenographer's fees
is based upon the fact, as claimed, that the referee was
actually engaged only five and one half days in the trial
of the cause, and had already exacted from defendants,
and required them to pay, sixty-five dollars before he
would report their part of the testimony, and that this
length of time was made necessary by the fact that the
referee permitted and allowed the stenographer to take the
testimony on a typewriter, instead of in shorthand, and
thus prolonged the hearing, and increased the per diem of
both the referee and stenographer largely in excess of what
it would otherwise have been; and that the stenographer
was only entitled to ninety dollars for taking and extend-
ing the testimony, and defendants had already paid him
seventy dollars, which he demanded before he would allow
their testimony to be filed.   If these objections are well
founded, they certainly should have been sustained.   The
referee was entitled to his compensation only for the time
actually and necessarily spent in the business of the refer-
ence, and, having been provided with a stenographer, he

could not, by resorting to the device of allowing and permitting the testimony to be taken on a typewriter, so increase his or the stenographer's per diem beyond what it would have been had the evidence been taken in shorthand. Such a practice finds no sanction or authority in the law, is in open and flagrant violation of the rights of the litigants, and ought to receive the prompt and vigorous disapproval of the court. The legitimate costs and disbursements necessarily attending the trial of a cause of this character are burdensome enough to litigants, without being increased by constructive and unauthorized fees. But since there are no findings of fact in the record, as provided in section 557 of the Code, we are unable to determine whether the objections are well founded or not. The law makes it the duty of the trial court, on retaxation of costs, to make findings of fact and law upon each item objected to, and give judgment thereon, from which an appeal may be taken. This seems not to have been done in this case, and for this reason the cause must be remanded with directions to the court below to make such findings and retax the costs.

The decree of the court will therefore be affirmed as to the first cause of suit, reversed and complaint dismissed as to the second, plaintiff to recover his costs and disbursements in this court and in the court below, and the cause remanded with directions to retax the costs in the court below. MODIFIED.