[Civ. No. 6462. Third Appellate District.—February 11, 1941.]

SARAH ELMA TEEL, Respondent, v. BANK OF EUREKA (a Banking Corporation) et al., Appellants.

Kenneth D. Sevier for Appellants.

E. S. Mitchell for Respondent.

TUTTLE, J.—Respondent, an elderly lady (85 years of age), on or about February 6, 1936, executed a deed to certain real property to her son, Otto Teel. The deed was delivered to appellant, "The Bank of Eureka", placed in an envelope with another deed to another son with the following instructions typed upon the envelope containing both deeds: "To be delivered upon my death and in no event to be withdrawn by me". Said instructions were subscribed by respondent in her own handwriting, the only consideration for the deed involved being an oral promise by the grantee to maintain and support his mother during her life.

Said Otto Teel died June 20, 1937, and appellant W. L. Wallace, was appointed administrator of his estate on August 6, 1937.

Respondent commenced this action to quiet title to the real property described in said deed, and to recover possession of said deed from appellant bank. Findings were entered in favor of respondent upon all issues, and judgment was entered accordingly. The appeal is from said judgment.

The evidence is without conflict, and the substance of it is given above.

It is the contention of appellants that the evidence is not sufficient to sustain the findings. They state that the only conclusion to be drawn therefrom is, when the deed was delivered to the bank, respondent thereupon divested herself of any and all right, title and interest in the real property. Respondent contends that the deed was executed and the instructions signed on condition that the grantee would maintain and support respondent during her lifetime; that the grantee failed to fulfill the condition in any particular, and that there is sufficient evidence to support the findings which are in accord with her contention. The pertinent portions of the findings read as follows:

"4. That on or about the month of March, 1935, plaintiff executed a certain deed to said real property in favor of one Otto Teel, now deceased, which said deed and instrument of conveyance was delivered to the bank of Eureka, a corpora-

tion, specified in Finding One, with instructions to deliver the same to said Otto Teel on plaintiff's death.

"5. That the condition upon which it was agreed that said deed should be executed and placed in escrow with instructions to deliver upon the death of said plaintiff was that the said Otto Teel would support and maintain plaintiff during her natural life, and the said Otto Teel did agree that if she would execute and place said deed in escrow and maintain plaintiff during the remainder of her natural life and would fulfill said condition in its entirety, *and did agree that if he did maintain plaintiff during the remainder of her natural life, then said deed should be delivered to him, and if he failed so to do, he would have no right, title or interest in or to said property, and that said deed should be returned to plaintiff.*

"6. That said Otto Teel, during his lifetime and after the execution of said deed and the delivery thereof to said Bank of Eureka with the instructions as aforesaid, on such condition that he would maintain and support plaintiff during her natural lifetime, wholly failed and refused to fulfill or perform such conditions and or to maintain or support said plaintiff in accordance with his agreement so to do."

The evidence is sufficient to sustain the findings. Plaintiff gave the following version of the transaction:

"Q. Now, what did your son say he would do if you would make out the deed to this property? A. He said he would absolutely support me in every particular and pay all my expenses, and when I came to leave this world he would put me away beautifully. . . . Q. Now, did you know when you went down there that you couldn't get this deed back, or did you think you could get it back any time you wanted? A. Well, I absolutely would because if he died first the deed certainly ought to revert back to me. Q. And that's what you thought when you took it down there? A. Yes, that's what I intended when it was taken out. When it was made it was to go back to me because he died before I did."

We believe that the judgment should be upheld. It is the rule, followed in most jurisdictions, that covenants to support and maintain the grantor are not assignable and die with the grantee. The cases proceed upon the premise that such covenants of the grantee are personal in character; are not subject to performance by any other person, and that cancellation of the deed may be had at the instance of the grantor. In 18 C. J., page 380, paragraph 439, it is said:

"If the grantees, in conveyances conditioned for maintenance or support, so neglect or refuse to fulfill the condition that there is a breach thereof, equity has jurisdiction to rescind the contract, cancel or set aside the deed, compel a reconveyance, or otherwise restore the consideration to the grantor."

In *Bishop* v. *Aldrich*, 48 Wis. 619 [4 N. W. 775], it is said:

"The covenants of Mrs. Carlton, to support and maintain the plaintiffs were not assignable, and died with her. Her death, a few months after the conveyance, put an end to the obligation to maintain the plaintiffs; and, if the conveyance stands, her heirs would take the land conveyed to her, subject to the life lease, without any obligation on their part to perform her covenants. This would be most inequitable. The use of the property may or may not be sufficient to maintain the plaintiffs; but whether it is or not, the principle is the same. The consideration for the conveyance has failed, and, under the circumstances peculiar to cases of this class, the conveyance ought to fail with it."

In the case of *Payette* v. *Ferrier*, 20 Wash. 479 [55 Pac. 629], an action was brought to cancel a deed where there was a similar agreement, and the grantee failed to perform. The court stated the rule to be as follows:

"The jurisdiction of a court of equity to cancel a conveyance made by a parent to a child, when the child fails to furnish the support provided by the agreement constituting the consideration for the conveyance, is well established. *Bogie* v. *Bogie*, 41 Wis. 219; *Thomas* v. *Thomas*, 24 Or. 251, 33 Pac. 565; *Patterson* v. *Patterson*, (Iowa) [81 Iowa 626] 47 N. E. 768; *Bresnahan* v. *Bresnahan*, 46 Wis. 381, 1 N. W. 39; *Jenkins* v. *Jenkins*, 3 T. B. Mon. 327; *Scott's Heirs* v. *Scott*, Id. 2; *Leach* v. *Leach*, 4 Port. 628; *Bishop* v. *Aldrich*, 48 Wis. 619, 4 N. W. 775; *Reid* v. *Burns*, 13 Ohio St. 49. . . . We think there is also another reason why the plaintiff is entitled to be revested with title. The covenants of the grantees to support and maintain the plaintiff were personal, and died with them. The happening of that event put an end to the obligation. *Bishop* v. *Aldrich, supra*."

In *Thomas* v. *Thomas, supra*, it is said, speaking of an agreement of like import:

"The consideration for the conveyance was a personal obligation, to be performed by him (the son) alone, and could

not be assigned, without the consent of the father, so as to substitute some other person in his place. . . . The sale of the land by the son puts it out of his power to comply with the conditions upon which he was to receive the title, and utterly defeats the object sought by plaintiff in making the conveyance, and, therefore, works a forfeiture of the estate. Any other rule would destroy the very purpose of the grant, and render the grantor dependent for his support and maintenance upon the pleasure and convenience of successive assignees, whether agreeable to him or not. Nothing can be more effectual, in securing the faithful performance of a contract of this kind, than the right of the parent to revest the entire estate in himself upon a breach by the son, in putting himself in a position where he is unable to comply with his contract. The rule which holds the child to a strict performance of his part of the contract, and gives the parent the right to recall the gift if he fails, is founded upon obvious principles of justice and right, and is the only rule, it seems to us, which will preserve the rights of a parent who enters into a contract of the character now under consideration.''

We are of the opinion that the foregoing authorities fully sustain the position of respondent, and that she is entitled to have the deed annulled and returned to her.

Most of the discussion in the briefs of both parties is directed toward the question of the *delivery* of the deed, plaintiff insisting that there was no valid delivery, and defendants maintaining that the delivery was effective for all purposes. It appears that the trial court found that the deed was delivered, but it also found that a contemporaneous oral agreement was made between the mother and son, wherein the son agreed, in consideration of the grant, to maintain and support his mother during her lifetime, and that the son had died before performing any part of his obligation. The agreement and subsequent death of the grantee, brings the case squarely within the rule stated above. It is therefore unnecessary for us to discuss the validity of the delivery. If it was invalid, plaintiff must prevail. If it was valid, plaintiff may invoke the rule laid down in the authorities cited.

It is contended by appellants that the trial court erred in permitting plaintiff to testify concerning the oral agreement mentioned, upon the ground that such agreement varies and modifies the terms of the written instructions. (Civ. Code, sec. 1056.) We do not believe that the facts bring the

812

case within the purview of that rule. It was not an attempt to modify the instructions. It was a separate contract which provided, impliedly, if not expressly, that if the grantee should die prior to full or partial performance, the property should revert to the grantor. In fact, the trial court finds that the grantee agreed that if he failed to perform, he would have no title to the property. (See italicized portion of the findings above.)

We believe that the judgment of the trial court was not only legally correct, but that it was also in conformity with sound equity practice.

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.