[Civ. No. 13013.   First Dist., Div. One.   July 25, 1946.]

ALBERT E. JARKIEH, Respondent, v. EMMA BADA-
GLIACCO, Appellant.

James M. Thomas and Emmett R. Burns for Appellant.

Harold H. Cohn for Respondent.

PETERS, P. J.—The plaintiff and defendant are brother and sister, being the children of Anna Jarkieh, now deceased. Plaintiff brought this action to establish a one-half interest in certain bank accounts which were in the names of defendant and Anna at the time of Anna's death. The jury decided in favor of plaintiff, and from the judgment entered on the verdicts the defendant appeals.

The theory of the first amended complaint, and the theory upon which the case was tried, is that although the legal titles

to the bank deposits are in defendant, she holds a one-half interest therein in trust for plaintiff.

The first amended complaint alleges in a first cause of action the existence of a trust account in the Hibernia Savings Bank which Anna Jarkieh, at the time of her death, held as trustee for the defendant. It is further alleged that decedent was an uneducated person unable to read or write; that she had no knowledge of business affairs; that the defendant was in a close confidential relationship with her mother; that the mother trusted her daughter implicitly; that during her lifetime (and the evidence most favorable to plaintiff shows that this occurred when the trust account was opened) the mother orally advised her daughter, the defendant, that she was establishing the trust account and expressed her intent that the moneys in the account were to be held by defendant after the death of the mother for the purpose of distributing the account share and share alike between defendant and plaintiff; that defendant orally agreed to divide the money in this fashion; that in reliance upon this agreement the mother established the trust account and permitted the moneys to remain in the account until the time of her death; that after the mother's death defendant refused to abide by the terms of the trust and refused to divide the money. The second cause of action alleges the existence of two joint accounts in the Bank of America held in the names of decedent and defendant as joint tenants. The rest of the allegations of the first cause of action are pleaded as to this cause of action.

The evidence was highly conflicting. The record discloses a bitter, and in many respects sordid, family dispute over this money between this brother and sister starting before the mother's death, becoming extremely bitter immediately after the mother's death, and continuing down through the trial. The evidence most favorable to plaintiff supports the implied findings of the jury that at the time the trustee and two joint tenancy accounts were opened defendant promised her mother that upon the mother's death she would divide the money equally with her brother. The express oral trust was proved by direct and circumstantial evidence.

The evidence shows that the two joint tenancy accounts, in which there was a total of about $7,000, were opened in 1935. The trustee account, in which there was in excess of $12,000, was opened in 1939. All the accounts had their origin in accounts formerly in the name of Anna Jarkieh

alone. The money represented a lifetime of scrimping and saving on the part of the mother under most adverse economic conditions.

The defendant attacks the judgment on various grounds. Fundamentally these objections all center around the contention that, inasmuch as the amended complaint does not charge, in express terms, that defendant exercised fraud or undue influence upon her mother in procuring the accounts, the defendant, as a matter of law, is entitled to the money in these accounts under the provisions of section 15a of the Bank Act. (Stats. 1909, p. 87, as amended; 1 Deering's Gen. Laws, Act 652, p. 211.) It is urged that the evidence showing the agreement to share the accounts with her brother was outside the issues, and was inadmissible under this section of the act. Connected with this same point are the contentions that the challenged evidence was admitted in violation of the parol evidence rule, and the statute of frauds.

Section 15a of the Bank Act upon which defendant places her main hope for a reversal, applies only to joint tenancy accounts, and reads in part as follows: ''The making of the deposit in such form [joint tenancy] shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such bank or the surviving depositor or depositors may be a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors.''

There are several important cases dealing with the presumptions created by this or similar sections. (See *Wallace* v. *Riley*, 23 Cal.App.2d 654 and 669 [74 P.2d 800, 807]; *Estate of Gaines*, 15 Cal.2d 255 [100 P.2d 1055]; see, also, *Moskowitz* v. *Marrow*, 251 N.Y. 380 [167 N.E. 506, 66 A.L.R. 870]; *Marrow* v. *Moskowitz*, 255 N.Y. 219 [174 N.E. 460]; *Walsh* v. *Keenan*, 293 N.Y. 573 [59 N.E.2d 409].) It is undoubtedly the rule, under this section, in the absence of fraud or undue influence, that the title to a joint tenancy account vests in the survivor. (See *Jorgensen* v. *Dahlstrom*, 53 Cal. App.2d 322 [127 P.2d 551].) But that rule is not decisive of the problem here presented. That is so because the facts pleaded and proved support the implied finding of actual fraud. It is elementary law that upon proof of a transfer made in reliance upon an oral agreement to hold in trust, and upon proof of the subsequent repudiation of this agreement, the trier of fact may infer that the maker of

the promise had the intention not to perform at the time the promise was made. That is actual fraud. ▌ In the instant case there is ample evidence that at the time the accounts were opened and many times afterward the mother stated in the presence of her daughter that it was her intent and the intent of the daughter that the accounts were to be divided equally upon the mother's death, and that the daughter acquiesced in these representations or actively made such representations herself. When the accounts were opened, and many times thereafter, the daughter orally promised to hold them in trust to the extent of one-half. Under such circumstances the trier of the facts was justified in inferring from the fact of the subsequent repudiation that defendant never intended to carry out the agreement when it was made. The subsequent repudiation relates back to the original promise. This actual fraud in the procurement of the accounts was pleaded and proved. This was the theory of the trial court as disclosed in the instructions. It is well settled that fraud may be proved in this fashion. In *Snyder* v. *City Bond & Finance Co.*, 106 Cal.App. 745, 748 [289 P. 859], the following appears: "As a further contention for the reversal of the judgment appellant urges the ground of insufficiency of the evidence. Appellant argues that there was no evidence before the jury that would justify the necessary finding that the promises were made without intention to perform. It is well settled that fraud may be proved by circumstantial evidence. 'An intention not to perform a promise may be a matter of inference from the facts proven' (12 Cal.Jur. 829), and subsequent conduct may be sufficient to show that there was no intention of performing at the time of the promise. (12 Cal. Jur. 740, citing *Williams* v. *Hasshagen*, 166 Cal. 386 [137 P. 9]; *Holiday* v. *Tolosano*, 39 Cal.App. 151 [178 P. 170, 171].) American Law Reports, Annotated, in volume 51, page 166, states the rule as follows: 'A person's intent, within the meaning of the rule relating to fraudulent promises made without intention of performance, is often a difficult matter to determine, and evidence of subsequent conduct and speech on the part of the promisor may be resorted to for the purpose of showing fraudulent intent, which may be shown by such evidence as matter of inference, although there is no direct evidence of a preconceived, secret intention on the part of the promisor at the time of making the promise, not to perform it.' In *Holiday* v. *Tolosano, supra,* the court said:

'It is also true that there is no direct evidence in the record before us that at the time of making the contract here involved there was any preconceived, secret intention on the part of Tolosano not to perform it; but in this connection the record, in our opinion, discloses sufficient evidence from which it may be justly inferred that at the time of entering into the contract Tolosano had in fact no intention of performing his obligations thereunder. ''What a person's intent in such a matter may be is often a difficult thing to determine. It usually must be ascertained from his future conduct and speech, and the fact as to such intent is one peculiarly to be deduced by process of reasoning from the facts in evidence by the trial judge.'' (*Tench* v. *McMeekan,* 17 Cal. App. 14, 20 [118 P. [476], 478].)' ''

It is thus apparent that the instant case falls squarely within the actual fraud exception contained in section 15a of the Bank Act. This determination makes it unnecessary to decide at the present time whether the fraud exception in the section covers cases of constructive fraud. That question is an open one in this state, the Supreme Court, in the recent case of *Estate of Gaines,* 15 Cal.2d 255 at p. 267 [100 P.2d 1055], expressly so holding.

It might also be pointed out that, under section 15a, in the case of joint deposits, in the absence of fraud or undue influence, the surviving joint tenant only takes *title* to the account. There is nothing in the wording of that section that precludes a holding that in a proper case, regardless of fraud or undue influence, the surviving joint tenant holds that legal title in trust for another. In such a case the conclusive presumption contained in the section is not being disturbed. Title goes to the survivor but evidence is admissible to show that the survivor holds such title subject to the terms of a trust.

These arguments of defendant are only applicable to the two joint tenancy accounts, and are not applicable at all to the trustee account. The provisions of the Bank Act creating the conclusive presumption in favor of the depositors apply only to accounts in joint tenancy. As to trust accounts the Bank Act merely provides a protection to the banks, in that the bank is authorized to pay the balance to the person for whom the trust deposit was made.

The contention that the evidence is insufficient to support the judgment requires but passing mention. There is

direct evidence given by plaintiff that when the accounts were opened in 1935 and 1939 there was a family discussion in which plaintiff, defendant and the mother participated, and that it was then agreed by all that the accounts should be opened as was later done so that in case of the mother's death the daughter could withdraw the money and divide it equally with her brother. There is substantial evidence that defendant agreed to this arrangement. This testimony, although contradicted by defendant, alone supports the judgment. There was ample evidence that subsequently the mother stated to several apparently distinterested witnesses, in the presence of the daughter, that this was the arrangement made by her and her daughter. Shortly before her death the mother, who was Russian, visited a Russian priest in San Jose and discussed the matter with him. The daughter was present. The priest testified that the mother told him of the accounts and that it was her desire that they be equally divided between her two children. The priest asked the defendant how she felt about it and she replied that her mother was "the boss." After the mother's death the priest testified that defendant visited him and promised to divide the money in accordance with the agreement. While it is true that evidence of the existence of a trust must be clear and convincing (*Estate of Gaines,* 15 Cal.2d 255, 266 [100 P.2d 1055]), the present record amply meets all of the requirements laid down in that case.

█ The contention that the oral evidence of the existence of the trust was inadmissible because it varied the terms of the written agreements entered into with the banks, is clearly without merit. This is not a case where the plaintiff claims that the parties never intended to create joint tenancies, or trustee accounts, but a case where it is claimed that the titles to these accounts came to defendant subject to a trust. Such evidence in no way affects the original written agreements entered into with the banks. (*In re Kellogg,* 41 Cal.App.2d 833, 840 [107 P.2d 964].) This rule was stated in *Estate of Gaines,* 15 Cal.2d 255, 265 [100 P.2d 1055], in the following language: "The theory of the trial court seems to have been that it was competent to introduce the evidence discussed above to show that though title passed to appellant under the joint tenancy agreement, it went to him *in trust.* The cases relied upon are those which hold that though a writing purports to make an absolute transfer, extrinsic evidence may be

512

offered of a collateral agreement to hold the property as security, or in trust. (See Wigmore, *supra,* sec. 2437; Williston, *supra,* sec. 635.) This exception to the parol evidence rule is, of course, well settled; and the evidence might be admissible under such a theory, if it established a collateral agreement on appellant's part to hold the property in trust.''

█ Equally untenable is the contention that the alleged oral agreement violates the statute of frauds. (Code Civ. Proc., § 1973(6) ; Civ. Code, § 1624(6).) These sections provide that an agreement which by its terms is not to be performed during the lifetime of the promisor, or an agreement to devise or bequeath any property, or to make any provision for any person by will must be in writing. These sections are not here applicable. No agreement to devise property is involved. The promisor is the daughter who, under the agreement found to exist, promised to share the money upon surviving her mother. Clearly, the promise was to be performed within her lifetime. The case of *Woolsey* v. *Woolsey,* 121 Cal. App. 576 [9 P.2d 605], relied upon by defendant, is not in point. That was an action to enforce an alleged parol trust agreement as to a joint account. The court properly held that such an agreement was invalid under the statute of frauds to the extent that it purported to require the bequeathing of the bank fund by the surviving joint tenant by will. Here no such agreement was involved.

█ It is also urged that the trial court erroneously instructed the jury. The instructions of which complaint is made refer to the alleged promise of defendant to divide the money and use the term ''fraud'' in connection therewith. Defendant argues that fraud was outside the issues. For reasons previously given this contention is without merit.

It is also urged that error was committed by the refusal of the trial court to give certain instructions claimed to be material to defendant's case. In this connection the following facts are pertinent. The trial commenced on June 24, 1943, and ended July 13, 1943. During the course of the trial the judge repeatedly called the attention of counsel to the fact that no instructions had been handed to the court as required by section 607a of the Code of Civil Procedure. After repeated warnings that were disregarded the judge stated to counsel that because of their failure to comply with the statute he was making an order that neither side would be permitted to present more than ten instructions. Subsequently,

and on July 6, 1943, defendant's counsel presented twenty-four instructions to the court, and plaintiff's counsel presented ten. Just before the argument to the jury on July 13, 1943, defendant proffered an additional two instructions. The court gave nine of defendant's twenty-six instructions. As to the refused instructions, seventeen in number, some were properly refused on the ground that they did not apply, others because the matter contained therein was covered by other instructions, and others because the provisions of section 607a of the Code of Civil Procedure were disregarded. The defendant contends that four of the refused instructions should have been given. Two of these instructions were refused because of section 607a, and the other two because the court felt they did not apply.

Section 607a of the Code of Civil Procedure provides: "In every case which is being tried before the court with a jury, it shall be the duty of counsel for the respective parties, before the first witness is sworn, to deliver to the judge or justice presiding at the trial, and serve upon opposing counsel, all proposed instructions to the jury covering the law as disclosed by the pleadings. Thereafter, and before the court has commenced instructing the jury, and before the commencement of the argument, counsel may deliver to such judge or justice, and serve upon opposing counsel, additional proposed instructions to the jury upon questions of law developed by the evidence and not disclosed by the pleadings. All proposed instructions shall be typewritten, each on a separate sheet of paper. Any proposed instruction which is delivered to the judge or justice at a time later than is provided for herein may be disregarded; but, in that event, the judge or justice shall write upon the margin of such proposed instruction the fact that he refused to consider the same for the reason that the requirements of this section have been disregarded."

██ Noncompliance with this section justifies the court in refusing to give the instructions. (See cases collected 24 Cal. Jur. § 75, p. 798.) The statute embodies a sound rule of procedure and is intended to give the trial judge ample time to study the proposed instructions. Defendant urges, however, that the trial court here abused its powers because, so it is claimed, plaintiff's theory was not disclosed by the pleadings and was not disclosed until July 1, 1943, during

the trial. The answer to this contention is that the two instructions of which complaint is made and which were refused for failure to comply with section 607a relate to matters disclosed by the pleadings. One deals with the rule that the burden rests upon the plaintiff to establish his case by a preponderance of the evidence and then explains what is meant by that phrase, and the second has to do with the conclusive presumption contained in section 15a of the Bank Act. Both of these instructions deal with matters of law disclosed by the pleadings. █ Furthermore, the matters covered in these two instructions were substantially covered by other instructions given by the court. As to the two instructions refused as not applying, one states, in effect, that before the jury can find there was a trust agreement they must find that the elements were proved with reasonable certainty, while the second deals with the law relating to voluntary trusts. The subject matter of these instructions was substantially covered by other instructions given by the court.

The judgment appealed from is affirmed.

Ward, J., and Schottky, J. pro tem., concurred.

A petition for a rehearing was denied August 24, 1946, and appellant's petition for a hearing by the Supreme Court was denied September 16, 1946. Spence, J., voted for a hearing.