[Civ. No. 20194. Second Dist., Div. Two. July 27, 1954.]

EMBASSY REALTY ASSOCIATES, INC. (a Corporation), Appellant, v. SOUTHWEST PRODUCTS COMPANY (a Corporation) et al., Respondents.

Bertram S. Harris and DeWald Baum for Appellant.

John H. Poole and Hahn & Hahn for Respondents.

FOX, J.—Plaintiff brought this suit to compel transfer to it of 6,100 shares of common stock in Southwest Products Company, herein referred to as Southwest. Plaintiff appeals from an adverse judgment.

In 1946 defendants Hackman and Potter organized Southwest. Each had 3,050 shares of its common stock out of a total of 9,600 shares. All of the stock was ordered held in escrow by the corporation commissioner, with the provision in the permit that none of said shares nor any interest therein could be sold or transferred until the written consent of the com-

missioner had been obtained therefor. Hackman and Potter were the principal officers and owned the controlling interest in Southwest at all times material to this action. In the summer of 1948 Southwest was in bad financial condition and in serious need of additional funds.

Plaintiff corporation, herein called Embassy, was in the real estate and investment business. Edward S. Maddock was its president and the owner of the controlling stock interest. August H. Fester was a director and officer of Embassy. He contacted Southwest as a representative of Embassy for the purpose of having Embassy attempt to assist Southwest in working out its financial problems. Southwest made available to Fester all of its books and records including its minutes and stock permit. He was also introduced to the escrow holder of the stock. Fester negotiated an agreement dated August 3, 1948, between Embassy and Southwest which was also executed by Hackman and Potter, since the agreement covered the controlling stock interest in Southwest which was held by them. Generally, this agreement provided that Embassy was to have an option to purchase Hackman and Potter's stock provided Embassy furnished Southwest additional financing in the sum of $150,000, and then the stock was to be distributed between the new investor, Embassy, and Hackman and Potter, as therein specified, which, however, is not here material. This option agreement was extended from time to time and finally expired by its own terms on September 30, 1950. After the execution of the agreement of August 3, 1948, Fester, as an employee of plaintiff, sought to obtain financing for Southwest. As a part of this undertaking Fester prepared assignment forms which he presented to Hackman and Potter for execution, which purported to assign their respective stock interests in Southwest to him. As a basis for securing their signatures to the documents Fester told them this procedure was necessary in order to facilitate the financing pursuant to the agreement of August 3d; that he would be able to show prospective investors that he was in a position to deliver the stock. Both Hackman and Potter objected to signing these instruments in that form; Fester, however, told them it was necessary if he was to continue to work on the Embassy contract and that they could put their trust in him. It was understood between Fester, Hackman and Potter that in the event Embassy was not able to perform under the option agreement the assignments would be returned to Potter and Hackman. At no time did Fester claim any ownership in this stock by

virtue of these assignments—neither Fester nor Embassy paid any money or transferred any property or gave any other consideration to Hackman or Potter for these assignments. No certificates of stock were ever delivered to Fester, nor was any endorsement made on any stock certificate. Nor was any request made of the corporation commissioner for permission to transfer the certificates which were then held in escrow pursuant to the provisions of the stock permit. The assignments were returned August 30, 1951. Embassy was never able to obtain any financing for Southwest pursuant to the option agreement and therefore was never in a position to exercise its option.

In October, 1950, Frances A. Wright, a minority stockholder of Embassy, commenced a stockholders' derivative suit against Edward S. Maddock, as president, director and majority stockholder of Embassy, and against Fester as an employee, director and officer of Embassy, on the theory that they had obtained secret benefits while in the employ of Embassy and had retained these for their personal benefit. The alleged profits included many items, among them being stock in Southwest assertedly held in their own names. After a trial the court gave judgment in favor of Maddock but against Fester as to any interest he might have in the stock of Southwest as a result of the aforementioned assignments made to him by Hackman and Potter. As a result of that judgment Fester assigned to Embassy whatever right, title and interest he had in and to the stock of Southwest by virtue of the Hackman and Potter assignments.

Neither Hackman, Potter nor Southwest was a party to that action. The only connection that any of them had with the suit was that Potter was subpoenaed and testified as a witness, and the Hackman and Potter assignments to Fester, which had been returned by him, were produced in court in response to a subpoena duces tecum served upon the secretary of Southwest.

At no time has Hackman, Potter or Southwest ever been employed by, or owned stock in, Embassy. Neither Hackman nor Potter has ever been an officer of Embassy. Their only connection with Embassy grew out of the agreement of August 3, 1948. Maddock was never an officer, director or employee of, nor did he ever own any stock in, Southwest. Neither did Embassy own any of Southwest's stock. Fester's connection with Embassy was terminated at the end of November, 1949. He was employed by Southwest from December, 1949, through June, 1951.

This suit is based on the assignments executed by Fester to plaintiff conveying to it any right, title, and interest he had in and to the stock of Southwest by reason of the Hackman and Potter assignments to him. Plaintiff's theory is that the judgment in*Wright* v. *Maddock* was res judicata as to the ownership of this stock.

The trial court held, *inter alia,* that the judgment in *Wright* v. *Maddock* was not res judicata as to the ownership of the stock in question; that the assignments by Hackman and Potter to Fester were for convenience only to assist him in obtaining financing for Southwest under the agreement of August 3, 1948; that the assignments were to be used and to be effective only in the event Embassy was able to obtain the financing therein provided for, which it was never able to do; and that there was no consideration for the assignments. Plaintiff appeals from the judgment which denies it any relief. Its arguments, however, are not persuasive.

A prior adjudication is not res judicata unless the issue decided therein was identical with that in the present action, a final judgment on the merits was rendered in the prior action, and the party against whom the plea is raised was a party or in privity with a party to the prior action, or controlled such litigation. (*Bernhard* v. *Bank of America,* 19 Cal. 2d 807, 813 [122 P.2d 892]; *Dillard* v. *McKnight,* 34 Cal.2d 209, 216 [209 P.2d 387, 11 A.L.R.2d 835]; *Alexander* v. *Hammarberg,* 103 Cal.App.2d 872, 882 [230 P.2d 399]; *Stafford* v. *Russell,* 117 Cal.App.2d 319, 320 [255 P.2d 872]).

Applying this rule, it is clear that the doctrine of res judicata is not here applicable. In the first place, neither Potter, Hackman, nor Southwest was a party to the *Wright* v. *Maddock* action. Likewise, neither of them was in privity with any party to that action, and had no control over it. None of these three parties had a right to make a defense therein or to appeal from the judgment in the prior action. The fact that Potter testified in the earlier suit certainly does not make the judgment binding on him. Likewise, the production in court by Southwest of the original assignments in response to a subpoena duces tecum does not make the judgment binding on it. Fester, who was an officer of and employed by Embassy when these assignments were secured by him and who was later employed by Southwest, had terminated such employment more than six months prior to the trial of the *Wright* v. *Maddock* case. There is no showing that either Southwest, Potter or Hackman there-

after had any direction of or control over Fester, or that at any time they had any part in determining the position that either Fester or Maddock would take in the prior litigation.

An examination of the pleadings in *Wright* v. *Maddock* demonstrates that the issue decided therein was not "identical with the one" presented in the instant case. The prior suit was to determine whether Fester and Maddock, as employees and officials of Embassy, had made any secret profits which they had retained; and if so, to compel them to turn the same over to Embassy. As an incident to that suit Fester was ordered to assign to Embassy any interest he had acquired in the stock of Southwest. The case at bar, however, seeks to require Potter, Hackman and Southwest to transfer and deliver to plaintiff 6,100 shares of Southwest's stock standing in the names of Potter and Hackman. The issue here is the claim of ownership of that stock by Potter and Hackman. Obviously the issues in the two cases are different. Hence the principle of res judicata may not be invoked against these parties.

Plaintiff argues that the trial court violated the parol evidence rule in admitting oral evidence that Potter and Hackman executed and delivered the assignments to Fester for convenience only to assist Fester as an employee of plaintiff in obtaining financing under the option agreement and that these assignments were to be used and to be effective only in the event plaintiff exercised its option by obtaining the financing specified therein. This rule, however, is not here applicable. Even though a writing purports to make an absolute transfer, extrinsic evidence may be received of a collateral agreement to hold the property as security or in trust. (*Estate of Gaines*, 15 Cal.2d 255, 261 [100 P.2d 1055]; *Jarkieh* v. *Badagliacco*, 75 Cal.App.2d 505, 511-512 [170 P.2d 994].) Also, the rule is well established that parol evidence is admissible to show that a contract fully executed and delivered is not to be effective unless and until some condition extraneous to the terms of the contract, has been complied with, as where it is not to be effective until some future specified event transpires. (*Severance* v. *Knight-Counihan Co.*, 29 Cal.2d 561, 563 [177 P.2d 4, 172 A.L.R. 1107]; *Gleeson* v. *Dunn*, 113 Cal.App. 347, 350 [298 P. 119]; *Teel* v. *Bank of Eureka*, 42 Cal.App.2d 807, 811-812 [110 P.2d 78]; 3 Williston, Contracts, rev. ed., § 634.) The parol evidence did not contradict the assignments or seek to vary their terms, and was not admitted for such purpose. It was received rather to show that Fester

did not have the beneficial ownership of the stock but held it for Potter and Hackman, and that he was not at liberty to use these assignments until and unless plaintiff obtained the financing for Southwest provided for in the option agreement. Under the above authorities, such parol evidence was properly admitted. ■ It is, of course, axiomatic that since Fester acquired no beneficial ownership in this stock, he conveyed nothing to plaintiff by his assignment to it of all his right, title and interest therein, and that plaintiff was subject to the same defenses as Fester. (Code Civ. Proc., § 368.)

■ One of the important findings was that "there was lack of and failure of consideration" for the Potter and Hackman assignments. This is a good defense against an assignee and may be shown by parol evidence. (Code Civ. Proc., § 1962, subd. 2; *Shiver* v. *Liberty Bldg.-Loan Assn.*, 16 Cal.2d 296, 299 [106 P.2d 4].) ■ This finding is fully supported not only by the testimony of Potter and Hackman but also by that of Fester as well. They were all familiar with the circumstances under which the assignments were made.

Since the findings that we have discussed are amply supported by properly admissible evidence, and since these findings are adequate to sustain the judgment, it is unnecessary for us to consider other challenged findings.

■ Plaintiff complains that the findings in *Wright* v. *Maddock* are contrary to the findings in the instant case. Since, however, as previously pointed out, the doctrine of res judicata may not be invoked against these defendants, that decision and the findings on which it was based are not controlling in the case at bar.

Plaintiff charges that the trial court refused to permit the plaintiff "to rebut the evidence of its adversary" by either parol or documentary evidence. Plaintiff apparently had an idea that some finances were obtained for Southwest as a result of the agreement of August 3, 1948, and the extensions thereof. The only person who appears to have had anything to do with that agreement and plaintiff's efforts to carry it out, who was not a witness in this case, was Maddock, who, according to plaintiff's counsel, was in Chicago at the time of the trial. It does not appear, however, that he had been subpoenaed. Thus it is the plaintiff's fault, and not the court's, that Maddock was not available as a witness. Furthermore, the transcript of the testimony at the former trial was received in evidence in this trial. Maddock testified at that time, hence his story was before the court in this case. The "documentary evidence" to

which plaintiff refers relates to the corporate records of Southwest. Plaintiff served a subpoena duces tecum* on Southwest apparently requiring it to produce all of its records from 1946 to 1953. Obviously it was too broad for, among other reasons, it covered a period of approximately two years prior to the agreement of August 3, 1948, and some three years after the expiration of that agreement in September, 1950. Plaintiff does not appear to have specified, either in its affidavit for the subpoena duces tecum or during the course of the trial, any particular documents or records which were material to any issue in the case. It merely wanted to check and investigate all the records of Southwest from the time of its incorporation to the date of the trial—a period of some seven years. This it had no right to do. (*McClatchy Newspapers* v. *Superior Court*, 26 Cal.2d 386, 396 [159 P.2d 944]; *People* v. *Keith Ry. Equipment Co.*, 70 Cal.App.2d 339, 361 [161 P.2d 244]; *Pelton Motors, Inc.* v. *Superior Court*, 120 Cal.App.2d 565, 569 [261 P.2d 275]; *Proctor & Gamble Mfg. Co.* v. *Superior Court*, 124 Cal.App.2d 157, 161 [268 P.2d 199].) That plaintiff had opportunity to get any particular documents that were material is demonstrated by what transpired near the end of the trial. At the conclusion of the rebuttal testimony of Mr. Poole, attorney for Southwest, counsel for plaintiff requested the production of Southwest's records from 1946 to 1953. Mr. Poole stated he would be glad to produce anything that was pertinent. The court then advised counsel for plaintiff that ''If there is any particular record that you can name, we will see whether or not it is material, and then I will direct as to whether or not it should be produced . . .'' It is thus clear that plaintiff did not make a proper showing for the production of the records of Southwest and that the court did not abuse its discretion in its rulings in these matters.

An examination of the entire record demonstrates that all parties to this action had a fair trial and that the trial judge correctly decided the case.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied August 12, 1954, and appellant's petition for a hearing by the Supreme Court was denied September 16, 1954.

---

*The subpoena is not a part of the record on appeal.