[Civ. No. 25394.   Second Dist., Div. Two.   Oct. 20, 1961.]

J. WILLIAM BACK, Appellant, v. NEW YORK MER-
CHANDISE COMPANY, INC. (a Corporation), Re-
spondent.

A. W. Brunton for Appellant.

Flanagan & Allen, John Joseph Hall and R. Virgil Allen for Respondent.

HERNDON, J.—Plaintiff and appellant brought this action to recover rentals claimed by him as lessor under the terms of an alleged lease and for damages resulting from defendant's breach of its obligation as lessee thereunder. Defendant denied the existence of the lease sued upon. The basic issue presented to the trial court was whether or not certain letters written by the parties, construed in the light of their conduct, constituted a lease or an extension of a prior lease.

After a nonjury trial, the court below found that the writings relied upon by plaintiff were not intended to constitute either a lease or an agreement to extend the prior lease, and that the conduct of the parties showed that they never reached an agreement upon the essential terms of the new lease which they had attempted to negotiate. Findings of fact and conclusions of law favorable to defendant were accordingly signed and filed, and judgment was entered that plaintiff take nothing except the sum of $250 for an item of special damage.

On this appeal from the judgment, plaintiff asserts that the evidence is insufficient to support the findings. It appears to be his position that the writings upon which he relies are entirely complete, certain and unambiguous and that, in view of the conduct of the parties, his conclusions as to the meaning and effect of such writings must be adopted as a matter of law. The lengthy record, viewed in conformity with familiar rules, demonstrates that plaintiff's contentions are without merit.

On April 9, 1953, plaintiff and his now deceased wife, as lessors, and defendant, as lessee, executed a lease of certain real property for a term of three years, commencing June 1, 1953, and ending May 31, 1956, at a rental of $2,000 per month. The improvements on the property consisted of four buildings providing some 38,000 square feet of floor space which the defendant lessee used for purposes of storage and warehousing. The lease provided that the lessor "shall maintain and keep in good repair all exterior walls and roofs of the buildings on said demised premises." The lessee was given the option of renewing the lease for an additional three-year period upon the same terms and conditions. Defendant went into possession of the leased property shortly after the execution of the lease.

During the spring of 1955, plaintiff and defendant's vice-president, Mr. Thatcher, had various discussions concerning defendant's need for more room, and plaintiff's proposal to

construct a new building on a vacant portion of the premises. Plaintiff's proposal contemplated an extension of the original lease, or the execution of a new lease, for an additional term of five years at a rental of $2,070 per month. In the course of their discussions, Thatcher complained that whenever it rained there was leakage in the roofs of the existing buildings, and stated that putting the property into better repair would have to be a condition of any new lease. Thatcher also stated that the new building would have to be equipped with a sprinkler system.

One of the two writings primarily relied upon by plaintiff is a letter written and signed by him, addressed to defendant, dated July 12, 1955, and reading as follows:

"Pursuant to previous discussion concerning the construction of a brick building on the [leased premises], please be advised that the lessors will construct a brick building of the approximate size of 50' by 125' on said fifty foot portion of said leased premises, . . . provided that your company will extend the term of the present lease of said premises, or enter into a new written lease, on the same terms and conditions as the present lease with the exception that the extension of the term or the term of the new lease, shall be for an additional five years, after the date of termination of the present lease, and the rental shall be increased to the sum of $2,070.00 from the date of the completion of the construction of said brick building.

"The rental on the present lease during the remainder of its term would therefore be $2,070.00 per month from the date of completion of said building, and the rental for the extended five year period would also be at the rate of $2,070.00 per month.

"If you will agree to enter into a new lease, or an extension agreement of the present lease for the time herein mentioned and at the rental herein mentioned, please signify, through your duly authorized officer or officers, on the enclosed copy of this letter that you will execute either an extension of the present lease for an additional five years, or that you will execute a new lease having the same terms and conditions with the exception of the amount of rental and the period of termination, upon the completion of said brick building."

Below his signature to the foregoing letter, plaintiff added a form of acceptance for defendant's execution, stating the defendant "hereby agrees to execute a new lease or extend

the term of its present lease, above described, at the rental and for the term above mentioned, upon completion of the construction of the building above mentioned.''

This letter, which plaintiff characterizes as the ''offer,'' was received by defendant in due course. Failing to receive a prompt reply, plaintiff called Mr. Thatcher and asked why there had been no response. Thatcher replied that he had to get clearance from New York and that he was not satisfied with plaintiff's ''promises,'' presumably referring to plaintiff's promises to repair the existing buildings.

Thereafter plaintiff received a letter written by Mr. Thatcher under date of July 29, 1955. Plaintiff contends that this letter constituted an acceptance of the offer made in his letter of July 12. It reads as follows:

''This is to advise that as an officer of this Company, I have been authorized by our President to negotiate a new Lease with you for a period of five years to include all of the property we now occupy plus the *two story* brick building you plan to construct for us on [the leased premises]. (Emphasis added.)

''It is our understanding and agreement that we will sign this new Lease at a rental of $2070 per month including the new building plus the entire premises which we are now leasing from you, and that the term of the Lease shall be for a period of five years from date of our occupancy of the new building providing it is completed before October 15, 1955. If not completed by then, the Lease will be dated January 1, 1956, again providing that the building is completed on or before that date. In the event that no building is completed by that date, our present Lease will continue as now written.

''We regret very much the fact that three months have already elapsed since we made verbal agreement regarding the new lease, and the promised construction. We sincerely hope that you will now make every effort to have this new building completed and available for our occupancy with the least possible delay.''

Although the letters above quoted were exchanged in July of 1955, it appears from plaintiff's testimony that in April of that year he had entered into a contract for the construction of a *one-story* brick building on the property and that construction had commenced in June. The plans and specifications for the new building were not shown to defendant. By October 1, 1955, the new building was complete except

for the laying of the cement floors, the plans and specifications making no provision for a sprinkler system. The laying of the floors was delayed by a strike of the workers in the rock and gravel industry. There was evidence from which it might be inferred that the floors could have been laid in October, notwithstanding the strike, at an additional cost of approximately $2,500 which plaintiff indicated he was unwilling to pay.

In October of 1955, during a rainstorm, defendant moved merchandise into the unfinished new building from some of the other buildings which were leaking badly, causing serious damage to defendant's property. Before moving this merchandise into the new building, Mr. Thatcher called plaintiff on the telephone, informing him of the water damage and of the need to move the property. Plaintiff told him "to go ahead."

The strike ended on December 31, 1955, and the floors were laid during the third week in January 1956. Defendant occupied the building about February 1, 1956. During February plaintiff demanded an additional rental of $70 for that month. Mr. Thatcher replied that he didn't think the building was finished, but to show good faith he would pay the additional amount. Defendant thereafter made demands upon plaintiff that a sprinkler system and toilet facilities be installed in the new building.

On March 2, 1956, plaintiff sent to defendant a proposed form of lease for a term of five years, commencing January 1, 1956, with a letter of transmittal stating "I am enclosing herewith a new lease covering the property . . . which confirms [*sic*] with your letter of July 29, 1955." This form of lease omitted some fifteen paragraphs that were contained in the original lease, and, as the trial judge observed, the proposed new lease materially differed from the old in its provisions with respect to the lessee's rights to extend the lease, the rights of the parties in the event of damage by fire, and in other substantial respects.

Under date of March 19, 1956, defendant's attorney wrote plaintiff a letter reading in part as follows: "Your proposed lease . . . has been referred to me for opinion. It appears that there are a number of features thereof which will require modification. You will recall there is also a problem in connection with the prior lease which resulted in substantial damages to the lessees that should be clarified." The "dam-

ages'' referred to apparently were those resulting from leakage in the roofs, of which defendant had previously complained.

On March 22, 1956, defendant's counsel sent plaintiff a letter transmitting a proposed form of new lease for a term of five years, commencing June 1, 1956. In this letter counsel called attention to various modifications which he had made in the lease form previously submitted by plaintiff. He stated that the principal modifications related to the installation of a sprinkler system and certain plumbing facilities, and that since this work remained to be done, it was deemed advisable not to commence the term of the lease until the expiration of the prior lease. It appears that plaintiff subsequently installed in the new building a sprinkler system and certain toilet facilities, but that defendant was not satisfied with the adequacy of the latter.

The next written communication between the parties is a letter dated September 7, 1956, written by plaintiff's counsel to counsel for defendant. In this letter counsel stated that the form of lease proposed by defendant in March was satisfactory with the exception of four specified provisions to which plaintiff objected. Each of these four provisions related to a matter of substance, and it is apparent from counsel's letter that plaintiff regarded them as substantial. One of these provisions gave the lessee an option to extend the lease for an additional term of five years, and the others dealt with the obligations of the parties with respect to alterations required by law, maintenance and repair of equipment, and installation of additional facilities.

In reply to plaintiff's letter of September 7th, defendant addressed a letter to counsel for plaintiff, dated September 21, 1956, stating, in effect, that the new building had never been satisfactorily completed, that plaintiff had failed to keep the old buildings in suitable repair, and that defendant would not be interested in a lease for more than one year, with an option for an additional four years. There was further correspondence between counsel, but no new lease was ever agreed upon or executed. Defendant removed from the premises on or about February 28, 1958. The parties agree that defendant paid all rentals due for the period during which it occupied the premises.

It is manifest from the foregoing review of the record that the question as to whether or not the parties intended the two letters which they exchanged in July of 1955 to constitute in

themselves an agreement to renew or extend their existing lease is essentially a question of fact. Plaintiff's arguments to the effect that the evidence is not sufficient to support the finding of the trial court on this issue are such as to indicate a failure to recognize that we have no power to reweigh the evidence.

In appraising plaintiff's contentions in this regard, we are bound by well-established rules. ▆▆▆ As stated in *New* v. *New,* 148 Cal.App.2d 372, 383 [306 P.2d 987]: "The appellate court must accept as established all facts and all inferences favorable to respondent which find substantial support in the evidence. ▆▆▆ 'And where appellant urges the insufficiency of the evidence to sustain the findings . . . the rule is that, "Such contention *requires [appellant] to demonstrate* that there is no substantial evidence to support the challenged findings." (*Nichols* v. *Mitchell,* 32 Cal.2d 598, 600 [197 P.2d 550].)' "

▆▆▆ In the case at bar plaintiff has wholly failed to demonstrate the lack of substantial evidence to support the challenged finding. Indeed, it is immediately apparent that this crucial finding is abundantly supported by the inferences which reasonably may be drawn from the conduct of the parties subsequent to July of 1955. As the trial judge commented in his summation of the case, it was not until March 1956, that plaintiff submitted a proposed form of lease, and he then submitted a form containing provisions very substantially different from those of the lease which was then in force. If plaintiff understood that the new lease was to be the same as the old, except for a change in the term and a change in the rent, it would seem logical that he would have submitted a lease form with no other material changes in its provisions.

As late as September of 1956, more than three months after the original lease had expired, counsel for the parties were still negotiating with respect to the terms of the new lease. Their failure to reach agreement upon very material and substantial terms is clearly shown by their correspondence as summarized in our statement of the case. The tenor of this correspondence is such as to indicate recognition by both parties that prior negotiations had resulted in no binding agreement.

It is readily apparent from a reading of the letters of July 12 and 29, 1955, that the trial court did not err in holding that these writings were ambiguous and that it was necessary

to consider evidence of the conduct of the parties in order properly to interpret them. ■ "Whether a contract is in any of its terms ambiguous or uncertain is a matter of determination in the first instance by the trial court. If it is found to be, it is primarily the duty of such court to construe it, after a full opportunity afforded the parties to produce evidence of the facts, circumstances and conditions surrounding its execution, and the conduct of the parties relative thereto." (*Beatty* v. *Oakland Sheet Metal etc. Co.,* 111 Cal.App.2d 53, 63-64 [244 P.2d 25]; *Nuland* v. *Pruyn,* 99 Cal.App.2d 603, 609 [222 P.2d 261].) ■ An appellate court will accept a reasonable interpretation of a writing adopted by the trier of the fact and will not substitute its own interpretation where extrinsic evidence is introduced in aid of interpreting the writing and from such evidence conflicting inferences may be drawn. (*E. K. Wood Lumber Co.* v. *Higgins,* 54 Cal.2d 91, 94 [4 Cal.Rptr. 523, 351 P.2d 795].)

■ We have examined the authorities cited by plaintiff in support of his contention that the two letters upon which he relies contain all the essential elements of a lease. None of these authorities dealt with a factual situation comparable to that here presented. None of them holds that an instrument should be declared as a matter of law to constitute a lease where the trier of the fact has found upon substantial evidence that the instrument in question was not intended to be a lease and where it appeared that the parties never reached agreement upon essential terms of the lease which they were attempting to negotiate.

One of the recent decisions cited by plaintiff is *City of Santa Cruz* v. *MacGregor,* 178 Cal.App.2d 45 [2 Cal.Rptr. 727]. This decision, after setting forth the essential elements of a lease, states (pp. 53-54) : "However, while these elements are necessary to the existence of a lease, they are not sufficient alone to create a lease unless the parties so intend. (*Linnard* v. *Sonnenschein,* 90 Cal.App. 729, 732 [272 P. 315].) The question is to be determined by a construction of the instrument in light of the surrounding circumstances."

■ Plaintiff seeks to invoke the rule that where the parties have agreed in writing upon all the essential terms of the lease, there is a binding lease, even though a formal instrument is to be prepared and signed later. *Gavina* v. *Smith,* 25 Cal.2d 501 [154 P.2d 681], cited by plaintiff, illustrates a proper application of this rule. In that case the

plaintiffs sued to quiet their title to certain real property. The defendant's answer alleged in substance that for a valuable consideration plaintiffs had granted him an option to lease the property for oil and gas operations and that he had exercised his option in the manner therein prescribed. *A complete form of lease was attached to the option agreement.* The trial court sustained a demurrer to defendant's answer without leave to amend and rendered judgment for plaintiffs.

In reversing this judgment the Supreme Court declared (pp. 503-504): ''Whether the exercise of an option creates a lease or merely an executory contract to make a lease depends primarily upon the intention of the parties. It was the intention of the parties, expressed in the option agreement, to set forth therein and in the attached form of lease all the terms and conditions on which plaintiffs offered to lease the property. By exercising the option, defendant accepted plaintiffs' offer and agreed to lease the property upon those terms and conditions. The requirement of a written lease was fully met, for the option agreement was in writing signed by the plaintiffs, and the option was exercised in writing by defendant. Nothing more was required to make a binding lease, so long as the parties did not intend that more should be done before the lease became effective.''

It is unnecessary for us to elaborate upon the obvious differences in the facts of *Gavina* v. *Smith, supra,* and those presented here. The instant record affirmatively shows not agreement but continued disagreement upon material provisions. That both parties regarded these provisions as essential is clearly indicated by their conduct. Thus the rule sought to be invoked has no proper application in this case. The rule that where only unessential matters are left for future determination, each party will be forced to accept a reasonable determination of the unsettled points, is inapplicable for like reasons.

█ Plaintiff argues that if defendant's letter of July 29, 1955, be regarded as a counteroffer, plaintiff's performance in conformity with the terms of such counteroffer, coupled with defendant's occupancy of the new building, resulted in the creation of a binding lease. This argument must be rejected for several reasons. In the first place, the trial court reasonably construed defendant's letter of July 29, 1955, as merely an agreement to negotiate. In the second place, this letter called for the construction of a *two*-story building to be com-

pleted by January 1, 1956. The *one*-story building actually constructed was not completed until after the specified date. In the third place, there was evidence that defendant insisted throughout the negotiations that placing the old buildings in a good state of repair would be a condition to its entering into a new lease and that this condition was not fulfilled.

The questions whether defendant's use of the new building caused the delay in its completion, whether the new building fulfilled the specifications contemplated by the parties in their negotiations, and whether defendant's occupancy and use of the building constituted a waiver of any right to assert the claimed deficiencies therein, were all questions of fact to be resolved by a consideration of evidence from which diverse and conflicting inferences might be drawn. Whether repair of the old buildings was specified by defendant as a condition to its entering into any new lease, and whether plaintiff substantially performed this condition were also questions of fact to be resolved in like manner.

▮▮▮▮ Plaintiff finally contends that the doctrine of equitable estoppel is applicable in that he constructed a building and made other substantial expenditures in reliance upon defendant's promises as evidenced by the letters of July 1955. This contention is unavailing because it appears from plaintiff's testimony that he entered into a contract for the construction of the new building in April of 1955, and that construction was commenced in June of that year. Hence, it is obvious that he could not have acted in reliance upon the subsequent writings. (*Cf. Paul* v. *Layne & Bowler Corp.*, 9 Cal.2d 561, 564 [71 P.2d 817].) Moreover, whether the equities of this case favor plaintiff or defendant is a question which depends upon an evaluation of the evidence, a function within the province of the trier of the facts.

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied November 14, 1961, and appellant's petition for a hearing by the Supreme Court was denied December 13, 1961.