[Civ. No. 19428.   First Dist., Div. One.   Feb. 5, 1962.]

PACIFIC HILLS CORPORATION, Plaintiff and Appellant,
v. LOWELL H. DUGGAN et al., Defendants and Respondents.

Wallace, Garrison, Norton & Ray for Plaintiff and Appellant.

Robert J. Foley, Lawrence D. Saler and Richard L. Doutt for Defendants and Respondents.

BRAY, P. J.—Plaintiff appeals from a judgment in favor of defendants Lowell H. Duggan and Janet A. Duggan.[1]

## QUESTIONS PRESENTED

Is the agreement to agree as set forth in paragraph VI of the contract an enforceable agreement?

## RECORD

Plaintiff sued for declaratory relief, specific performance, injunction and damages based upon the portion of a contract entered into between plaintiff and defendants (including the defaulted defendants) in which defendants agreed to enter into a contract in which the parties would agree as hereinafter set forth. The trial court concluded that the agreement to agree was not enforceable because its terms are too vague and indefinite, that it is lacking in mutuality of obligation, that plaintiff was guilty of laches, and that plaintiff had failed to perform or tender performance on its part.

On May 31, 1956, the parties entered into a contract in which plaintiff purchased a tract of land from defendants, referred to therein as "Parcel One." It was stipulated that no controversy existed concerning performance of the contract as to the real property described in parcel one. This tract was to be, and in fact was, developed for residential sites. A second, adjoining and smaller tract was described as "Parcel Two." The agreement concerning this parcel which is the basis of this action, is set forth in paragraph VI of the contract. Paragraph VI reads: "In respect to Parcel Two, as described in the agreement, the Parties hereto agree that within ninety (90) days from the signing of this agreement the parties will enter into a contract wherein Second Parties will agree to deed, at a date mutually agreeable, said parcel to First and Second Parties as tenants in common. The agreement shall also provide that in consideration of said deed First Party will contribute to First and Second Parties as joint venturers the sum of $35,700 to be used by the parties

---

[1] Rowland Sweet, Rosemary Sweet, and Gerald E. Cheadle, joined as defendants, defaulted. They were not included in the judgment appealed from.

for the purpose of developing and improving said property for sale.''

Prior to entering into the contract meetings were held between Thrane and Senness, representing plaintiff, and defendants Rowland Sweet and Lowell Duggan. The terms of the proposed contract were discussed. At the last meeting it was agreed that Duggan should write a letter embodying the terms agreed upon, the letter to serve as a basis for drafting the contract. Duggan wrote the letter, dated April 25, 1956. Both he and Sweet signed it. As to parcel two the letter stated: ''It is understood and agreed that the parcel of approximately 17 acres referred to as the commercial acreage shall be the subject of a joint venture between the buyer and the seller on the basis that the seller will pledge the 17 acres, more or less, at $2,100.00 per acre, and that the buyer shall pledge an equivalent amount in cash as his investment and that any additional borrowing for said joint venture shall be against equity only. The purpose of this provision is to enable the buyer and seller to jointly finance and develop a shopping center or light commercial venture on said 17 acres. This agreement with respect to the commercial acreage shall not be effective until the buyer has developed and paid for all acreage in the 130 approximate residential acres. We believe that the foregoing is the essence of the mutual agreement between sellers and buyers and this letter is intended as a framework for your attorney to draft a contract.''

The contract of May 31 was drawn and signed thereafter. Subsequently neither plaintiff nor defendants offered to enter into the joint venture contract mentioned in paragraph VI until March 10, 1959, when plaintiff demanded performance.

Duggan and Cheadle testified that on August 3, 1957, they told Garrison, Jr., who was representing his father who contemplated purchasing the interest in plaintiff corporation of Senness, who had died, that plaintiff no longer had any interest in parcel two. Garrison, Jr., denied that such statement was made. Thrane and Sweet testified that the first time they were aware of Duggan's position was in 1959. August 3, 1957, a letter was signed by the parties modifying the agreement as to parcel one, but it did not mention parcel two. Sweet took the position from the outset that parcel two could not be the subject of a contract until the full development of the residential lots in parcel one had been substantially completed. September 25, 1956, Thrane wrote Duggan requesting an extension of time to execute the contract. Duggan did not reply.

October 24, 1958, Sweet wrote Duggan to the effect that he did not think the time right to comply with their agreement and that he would rather wait until 130 residential acres in parcel one were built on, which ''was really our original understanding'' with plaintiff. October 30, Duggan replied stating in effect that the time for plaintiff to have acted under the paragraph VI agreement had expired several months prior to December 6, 1957, and that plaintiff did not have any rights to parcel two. March 10, 1959, plaintiff presented to each defendant a demand that the contract contemplated by paragraph VI be entered into. Defendants rejected the demand.

### Does Paragraph VI Contain An Enforceable Agreement? No.

It is conceded that paragraph VI constitutes an agreement to enter into a future agreement. ▮▮ The rules concerning such an agreement are set forth in *City of Los Angeles* v. *Superior Court* (1959) 51 Cal.2d 423, 433 [333 P.2d 745]: ''The contract is claimed to be void because it contains promises to agree in the future. The general rule is that if an 'essential element' of a promise is reserved for the future agreement of both parties, the promise gives rise to no legal obligation until such future agreement is made. [Citation.] ▮ The enforceability of a contract containing a promise to agree depends upon the relative importance and the severability of the matter left to the future; it is a question of degree and may be settled by determining whether the indefinite promise is so essential to the bargain that inability to enforce that promise strictly according to its terms would make unfair the enforcement of the remainder of the agreement. [Citations.] ▮ Where the matters left for future agreement are unessential, each party will be forced to accept a reasonable determination of the unsettled point or if possible the unsettled point may be left unperformed and the remainder of the contract be enforced. [Citations.]''

▮ The basic question is whether in paragraph VI any essential element is reserved for the future agreement of both parties, or is uncertain.

The agreement provides that the parties will enter into a contract wherein (1) defendants will agree to deed, at a date mutually agreeable, parcel two to plaintiff and defendants as tenants in common. This provision is clear and requires no further agreement of the parties other than as to the date

when the conveyance is made. Concerning this element, plaintiff contends that *City of Los Angeles, supra,* is in point. There the city and the Brooklyn National League Baseball Club, Inc., had entered into an agreement "which provided, among other things, for the exchange of certain properties and for the ball club to erect a stadium and procure the transfer from Brooklyn to Los Angeles of the franchise of the major league baseball club known as the 'Dodgers.'" (P. 429.) The contract left "to the future agreement of the parties the location and size, within 5 acres, of the site to be used for oil drilling, the nature of the recreational facilities to be constructed and maintained" (p. 433) and the rental to be paid for use of another field until the completion of the stadium. The court said (p. 433) : ". . . the uncertainty with respect to the exact location and size of the drilling site and the details with respect to the recreational facilities are matters which should not be treated as rendering the contract void. There is no indication that the city and the ball club are unable to come to an agreement as to them, and, if the parties cannot do so, the court may determine the matters within the test of reasonableness referred to above, in accordance with the general purposes of the contract. Similarly, the court could fix a reasonable rental for Wrigley Field, if this should ever become necessary."

There the action was brought by a taxpayer and not by the city itself and there was no indication that the ball club and the city would be unable to come to an agreement on the matters to be determined between them. These matters the court considered were relatively minor as compared to the matters upon which the parties had agreed. The essential element was the construction of the stadium as to which element the contract was highly detailed. The court said that the matters left to be detailed were not directed towards the primary purpose of the contract and were capable of being reasonably fixed by the court.

In our case, there is indication that the parties were unable to come to an agreement even as to the time element. Plaintiff contended all along that the understanding of the parties was that the agreement was not to be entered into until all of parcel one had been improved with houses. Defendants contended that it was to be entered into within the 90 days specified. When the deed was to be executed was an important element of the transaction. Thus, there was reserved for future determination this important element, concerning

which apparently the parties could not agree; differing from the baseball case, where a court, in the event of disagreement of the parties, could have applied the "test of reasonableness . . . in accordance with the general purposes of the contract." (*Supra*, p. 433.)

A court could not determine what was "reasonable" here for two reasons: (a) A fundamental difference between the parties on the subject, and, (b) as will hereinafter appear, the uncertainty as to the "general purposes of the contract."

(2) The agreement was also to provide that plaintiff, in consideration of the deed, would contribute $35,700 to be used by the parties for the purpose of developing and improving the property for sale. Here again there is uncertainty as to the time when the contribution was to be made. Defendants contend that it would be simultaneously with the execution of the deed. Plaintiff contends it would not be until the completion of the improvement of the other parcel. But more important, it is clear that the essential element of the type of development and improvement of the property was yet to be determined. This clause on its face could refer to merely improving the property for sale as bare lots, or to building on the property. If the latter, what kind of buildings and how many? Obviously, if buildings were to be constructed, the $35,700 to be contributed by plaintiff would not go far towards improving 17 acres of land. Additional financing would have to be obtained. The answer to how and how much would have to be subsequently agreed between the parties. See by analogy *Bonk* v. *Boyajian* (1954) 128 Cal. App.2d 153 [274 P.2d 948], holding incomplete an option agreement where "the instrument on its face is incomplete, uncertain and indefinite as to the amount of the monthly payments, the rate of interest, if any, to be paid, and what security was to be provided." (P. 156.) As there said, quoting from 1 Williston, Contracts (1936) section 45, page 131: " ' . . . if an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since either party by the very terms of the promise may refuse to agree on anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise.' " (P. 156.)

At argument, plaintiff stated that at the time of the signing of the May 31 contract it was impossible to tell just what type of development would be made of the land except that gen-

erally the parties had in mind a shopping center or light commercial venture; that this could not be determined until the development of parcel one had been practically completed. This makes sense; until the character of the surrounding area was determined, the type, size, cost and method of financing of a shopping center or light commercial venture to serve such an area would be chimerical.

The most essential part of the proposed joint venture was yet to be determined; namely, what to do with the acreage and money the parties agreed in the contract of May 31, 1956, to contribute to the joint venture; in other words, what was to be the venture? This determination was left to the future and thereby made the agreement legally unenforceable. In the event of the disagreement of the parties how could a court apply the test of reasonableness referred to in *City of Los Angeles, supra,* page 433, as to what sort of development was contemplated? In that case the court said that the enforceability of this type of contract depends upon the relative importance and the severability of the matter left to the future and that this question is settled by determining whether the indefinite promise is so essential to the problem that inability to enforce that promise strictly according to its terms would make unfair the enforcement of the remainder of the agreement. Applying that test here, it is clear that the development of the property was so essential that if this could not be done or the parties could not agree on how it was to be done, the plaintiff would not want to contribute its money or the defendants their land.

Plaintiff cites cases such as *San Francisco Iron etc. Co.* v. *American Milling etc. Co.* (1931) 115 Cal.App. 238 [1 P.2d 1008], holding that a contract creating a joint venture may be informal and need not be specific as to details such as to how the profits shall be divided. (It may even be oral. (*Fitzgerald* v. *Provines* (1951) 102 Cal.App.2d 529, 538 [227 P.2d 860].)) However, those cases deal with contracts creating a joint ventureship, not, as here, a contract to create one. Even if it could be considered a contract creating a joint venture, nevertheless it is still too indefinite. As pointed out in *Mason* v. *Rose* (1949) 176 F.2d 486, 489, the cases which hold that an agreement creating a joint venture is in a special category and not subject to as strict a test of definiteness as contracts generally, "present situations where the parties had agreed in general terms upon a joint venture, and where usually the

aggrieved party had put money into it.[2] Whether or not the aggrieved party had put in money, the other party had either got possession of the proposed subject matter, or had at least been able to exploit it for his own advantage. When the aggrieved party called him to account, he answered that there had never been any contract because all the terms had not been agreed upon, and, since there was no valid contract, he owed nothing to the aggrieved party except to return the money, if any, advanced. In such situations the courts decide that this answer is not sufficient and hold that the party who took over or exploited the subject matter did so as a joint adventurer. In some of the cases there are statements that a joint venture differs from other contracts in that co-adventurers do not have to agree on all the terms of their undertaking. [Footnote omitted.] In our opinion the cases upon which the appellant relies are to be explained as instances of an imposed fiduciary duty rather than instances of making for the parties a contract which they never contemplated making and never made. In any event, all these decisions depend upon a benefit derived by the defendant out of the proposed subject matter of the common adventure." (P. 489.)

In the *Mason* case the court was considering a contract to enter a joint venture between an actor residing in England and a motion picture producer residing in California, the project to be carried on in California. The court held the contract to be vague and indefinite and unenforceable. One of the indefinite terms was, as in our case, " '. . . the method of obtaining capital . . .' " (P. 487.) One of the questions to be determined was whether the contract should be considered under the laws of England or those of California. The court stated that under the laws of either, the contract was too indefinite to be given effect. It pointed out that in California "as in every other [state], a contract must be definite enough for a court to be able to ascertain what is the stipulated performance. *Van Slyke* v. *Broadway Ins. Co.*, 115 Cal. 644 [47 P. 689, 690, 928] ; *Wineburgh* v. *Gay*, 27 Cal.App. 603 [150 P. 1003] ; *Blake* v. *Mosher*, 11 Cal.App.2d 532 [54 P.2d 492, 494]."

In our case the situation is quite different from those situations in the cases in which the exception to the general rule

---

[2]The opinion refers to *San Francisco Iron & Metal Co.* v. *American Milling etc. Co.*, supra, 115 Cal.App. 238; *Andrews* v. *Bush*, 109 Cal.App. 511 [293 P. 152]; *Replogle* v. *Ray*, 48 Cal.App.2d 291 [119 P.2d 980], relied upon by plaintiff here.

was applied. Here, the parties have not entered into a joint venture; they have only agreed to do so. There is no subject matter which one party has exploited for his own benefit; neither has as yet contributed anything. Applicable to the language in the contract here, "the purpose of developing and improving said property for sale," is the following from *Mason, supra,* page 490: "This is just as vague as the agreement to form a syndicate 'for the purpose of developing' the mineral resources of a farm, which was held unenforceable in *Douglas* v. *Baynes* [1908] A.C. 477."

Our determination that the contract to agree is unenforceable in either equity or law makes it unnecessary to discuss the other questions raised by plaintiff.

The judgment is affirmed.

Tobriner, J., and Sullivan, J., concurred.

A petition for a rehearing was denied February 23, 1962, and appellant's petition for a hearing by the Supreme Court was denied April 3, 1962.