[Civ. No. 19947. First Dist., Div. Three. May 1, 1962.]

PORTOLA DEVELOPMENT COMPANY, Plaintiff and Appellant, v. THE BOARD OF TRUSTEES OF THE LELAND STANFORD, JR., UNIVERSITY, Defendant and Respondent; LADERA RECREATION DISTRICT, Intervener and Respondent.

130

Brobeck, Phleger & Harrison and Lane P. Brennan for Plaintiff and Appellant.

Jack Robertson for Intervener and Respondent.

Lawrence F. Ebb for Defendant and Respondent.

SALSMAN, J.—The plaintiff sought declaratory relief under a written contract with the Board of Trustees of Leland Stanford Junior University (hereinafter referred to as Stanford). The Ladera Recreation District intervened. The trial court determined there was nothing due plaintiff under the contract at time of trial, and plaintiff appeals from the judgment.

The plaintiff is the developer of the Ladera subdivision adjacent to Stanford lands in San Mateo County. In order to serve the subdivision with sewers it was necessary to run an outfall sewer line across Stanford property to connect with the facilities of the Menlo Park Sanitary District. Plaintiff negotiated with Stanford for an easement for the sewer line and with the Menlo Park Sanitary District for the use of its facilities. The negotiations resulted in the written contract of November 25, 1952. Under the contract plaintiff obtained an easement from Stanford; plaintiff agreed to install the sewer line along a route to conform to Stanford's land development program and to make the line of sufficient size to accommodate not only the needs of the Ladera subdivi-

sion but also the needs of Stanford as its lands might be developed in the future. The plaintiff agreed to and did pay the entire cost of the sewer installation, but is to be partially reimbursed by Stanford under a paragraph of the agreement which reads, in part, as follows: "5. If and as any of the lands of Stanford are connected with and served by said sewer line as above provided Stanford shall pay to the Company an amount or amounts, not to exceed in any one payment or in the aggregate the sum of $8,000, determined as follows: (a) When the first connection is made by Stanford to said sewer line a sum equal to $2.00 per foot for each linear feet [sic] (measured along said sewer line) from the manhole at the point where said sewer line connects with the present existing sewer of the District in Alpine Road, San Mateo County, California, to the point of Stanford's said first connection with said sewer line. (b) As each connection thereafter is made by Stanford with said sewer line, if such connection is at a point further (measured along said sewer line) from the aforesaid manhole than any previous connection by Stanford with said sewer line, a sum equal to $2.00 per foot for each linear foot (measured along said sewer line) between the previous Stanford connection which is furthest from said manhole and the connection currently being made by Stanford. If and when Stanford shall have paid the Company $8,000 pursuant to the provisions of this paragraph 5 no further payment shall be made by Stanford for any additional connections made by it with said sewer line."

The intervener, the Ladera Recreation District, was incorporated in 1958. It possesses eminent domain powers. It sought to lease 3½ acres of Stanford's land adjacent to the Ladera subdivision. Stanford refused to grant the intervener a lease. There were further negotiations by the intervener with Stanford, during which the subject of the intervener's powers of eminent domain were discussed, and Stanford eventually agreed to a lease of the 3½ acres requested. In its answer Stanford alleges this lease was entered into to avoid a condemnation of its lands. The recreation district requires sewer facilities for four toilets and the two dual shower stalls of the swimming pool bathhouse. By agreement with the Ladera School District and the Menlo Park Sanitary District the Ladera Recreation District has connected its sewer line with the sewer system within the Ladera subdivision. The sewage from the recreation district is thus discharged first

into the sewer system of the Ladera subdivision, thence through the outfall sewer line across Stanford lands into the facilities of the Menlo Park Sanitary District.

It was plaintiff's position at trial that Stanford lands were thus "connected with and served by" the outfall sewer line within the meaning of the contract between plaintiff and Stanford, and that the payment specified to be made by Stanford was fully due and payable. Plaintiff further contended there was no ambiguity in the contract and extrinsic evidence was not necessary to explain its meaning. Accordingly plaintiff rested its case after the introduction in evidence of the contract and a map showing the indirect hook-up made by the Ladera Recreation District with the outfall sewer line. The trial court considered the language of the contract to be ambiguous and received extrinsic evidence as an aid to its interpretation of the agreement, and found that the contract was not intended by the parties to apply to the situation disclosed by plaintiff's evidence.

Plaintiff contends on appeal that the language of the contract is not ambiguous; that Stanford lands are "connected with and served by" the sewer line within the meaning of the contract, and that it was error for the trial court to receive extrinsic evidence relating to the intention of the parties at the time the contract was entered into.

▆▆▆ We think the trial court was correct in receiving oral evidence as an aid in the interpretation of the contract of the parties. The exact meaning and application of the contractual language "connected with and served by" was disputed in good faith by the parties themselves, the plaintiff contending that the language covered any connection with the sewer line, direct or indirect, and the defendant and intervener contending it related only to a connection made in the orderly development of Stanford's lands.

The admissibility of extrinsic evidence to show the circumstances surrounding the making of a contract is long established. Section 1647 of the Civil Code provides: "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." Section 1860 of the Code of Civil Procedure reads: "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

■ Thus, in case of doubt as to the meaning of the words used by the parties in their contract, extrinsic evidence is admissible to show the circumstances under which the contract was made. Such evidence is received only to dispel some ambiguity in the language of the instrument itself by showing, not that the parties meant something other than what they said, but rather what they meant by what they said. (*Berverdor, Inc.* v. *Salyer Farms,* 97 Cal.App.2d 459 [218 P.2d 138]; *Petroleum Midway Co., Ltd.* v. *Moynier,* 205 Cal. 733 [272 P. 740]; *Jones-McLaughlin, Inc.* v. *Kelly,* 100 Cal. App. 315 [279 P. 1076].) ■ Here the evidence discloses that Stanford had a master plan for the development of 650 acres of land tributary to the outfall sewer line; that this plan was known to plaintiff and plaintiff's engineers at the time plaintiff requested the easement for the sewer line; that the easement was laid out to conform to Stanford's master plan; that the development of Stanford's lands would likely be from north to south, and that the repayment formula set out in the contract was designed to divide the cost in proportion to the area served. There was evidence also that Stanford entered into its agreement with the Ladera Recreation District to forestall a possible condemnation of its lands. Thus, there was substantial evidence before the trial court to justify and support its finding that the language used by the parties in the contract was never intended to apply to the factual situation disclosed by the evidence.

■ Where, as here, extrinsic evidence has properly been admitted as an aid to interpretation, any reasonable construction of the instrument by the trial court will be upheld even though there be evidence which might justify a contrary interpretation. (*Estate of Rule,* 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319]; *Universal Sales Corp.* v. *California Press Mfg. Co.,* 20 Cal.2d 751, 772-773 [128 P.2d 665]; *Greenberg* v. *Hastie,* 202 Cal.App.2d 159, 171 [20 Cal.Rptr. 747].) ■ From the evidence before it the trial court could reasonably find, as it did, that the contract between plaintiff and Stanford was not intended to apply to the situation shown by the evidence but was intended to apply to the development by Stanford of Stanford lands tributary to the outfall sewer line. There has been no development by Stanford of its lands tributary to the sewer line pursuant to the master plan, or any plan at all. All that has happened is that Stanford has leased, reluctantly, a 3½-acre parcel out of 650 acres to be served by the outfall sewer line to a public

entity possessing the power of eminent domain, and that such entity is indirectly making some slight use of the outfall sewer line by agreement with the Ladera School District and the Menlo Park Sanitary District. At the time of trial Stanford had not enjoyed any of the benefits contemplated by the contract and the court properly denied the payment demanded by the plaintiff.

The judgment is affirmed.

Draper, P. J., and Devine, J., concurred.