[Civ. No. 25525. Second Dist., Div. One. Nov. 9, 1962.]

LOUIS LESSER ENTERPRISES, LTD. et al., Plaintiffs and Appellants, v. WALTER S. ROEDER et al., Defendants and Respondents.

Charles J. Katz and Samuel W. Blum for Plaintiffs and Appellants.

O'Melveny & Myers, Bennett W. Priest and Allyn O. Kreps for Defendants and Respondents.

LILLIE, J.—Plaintiffs, real estate developers, sued for an accounting of profits alleging a joint venture arising out of a written agreement dated July 14, 1953; defendants deny a joint venture existed and claim that even if it had, plaintiffs failed to perform their obligations thereunder terminating their relationship. Judgment was entered for defendants.

The subject of the controversy is three letters growing out of plaintiffs' interest in developing 200 acres of land in Las Vegas purchased by defendants. After considerable discussion, plaintiffs, on July 14, 1953, prepared, and the parties signed, two letters (Exs. 1, 2). They provide that by August 14, 1953, plaintiffs pay to defendants, to be later deposited by defendants in the entity or entities to be thereafter formed by the parties for the development of the property, the sum of $105,000 (equal to funds already expended by defendants for the acquisition of a certain portion of the land); if said sum is not paid by August 14 defendants shall repay to

plaintiffs any sums advanced and the letters be deemed cancelled. Of the amount, plaintiffs advanced $10,000; on August 10 they advised they could not pay the balance by August 14 and asked for a reduction to $75,000. Thus plaintiffs prepared, and defendants signed, a letter dated August 10, 1953, (Ex. 7) which reduced the amount of $105,000 to $75,000. Plaintiffs having failed to pay the balance of $65,000 by August 14, defendants on August 17 notified them of their default and declared a cancellation, and in writing (Ex. 8) notified them that unless $65,000 was in their hands by 5 p. m., Thursday, August 20, the letters would be cancelled. Prior thereto plaintiffs deposited in the mail a letter (received by defendants August 21) enclosing their personal noncertified check in the amount of $65,000 (Ex. 9). Plaintiffs did not have such sum on deposit in the bank on August 21 or 24, and knew there were insufficient funds in the bank to pay the check with other checks then outstanding on the account. On August 21 defendants orally refused the check, returned it on August 24, and offered the return of the $10,000 which plaintiffs refused.

No attorney was ever agreed upon by the parties to draw the final papers, their understandings and agreements were never reduced to final writing and form, and the parties never agreed to the kind of mutual association their proposed venture was to take or to other essential terms of their contemplated final agreement.

Appellants argue the insufficiency of the evidence to support the lower court's finding that the letters of July 14 and August 10 constituted an interim agreement not intended to be a binding or completed contract, and conclusion that no final binding or completed contract and no joint venture or partnership of any type were ever created. While the evidence is in dispute, no reasonable construction of the same viewed in a light most favorable to respondents will admit an enforceable and binding contract between the parties creating any kind of a venture; and the record shows that the three letters amounted to no more than an interim agreement not intended to be completed or binding until after plaintiffs' payment of $65,000, the parties could agree to the form their joint participation would take and other essentials, and could mutually choose a lawyer and direct him to reduce their agreements and understandings to a final binding written contract.

While preliminary negotiations ordinarily result in a binding contract when all of the terms are definitely understood, even though the parties intend to later execute a formal

writing (*Gavina* v. *Smith*, 25 Cal.2d 501 [154 P.2d 681];
*King* v. *Stanley*, 32 Cal.2d 584 [197 P.2d 321]), where any
of the essential terms are left for future determination and
it is understood that the agreement is not deemed complete
until they are settled or where the parties understood that the
proposed agreement is not complete until reduced to formal
writing and signed, no binding contract results until this is
done. (*Apablasa* v. *Merrett & Co.*, 176 Cal.App.2d 719 [1 Cal.
Rptr. 500]; *Spinney* v. *Downing*, 108 Cal. 666 [41 P. 797];
*Las Palmas Winery & Distillery* v. *Garrett & Co.*, 167 Cal.
397 [139 P. 1077]; *American Aeronautics Corp.* v. *Grand
Central Aircraft Co.*, 155 Cal.App.2d 69 [317 P.2d 694];
*Dillingham* v. *Dahlgren*, 52 Cal.App. 322 [198 P. 832]; *Patch*
v. *Anderson*, 66 Cal.App.2d 63 [151 P.2d 644]; *Stoddard* v.
*Goldenburg*, 48 Cal.App.2d 319 [119 P.2d 800].) ▇▇▇ Al-
though the majority of cases deal with oral negotiations, the
same principle applies to preliminary written discussions, for
there is no meeting of the minds of the parties while they are
still negotiating terms. (*Apablasa* v. *Merritt & Co.*, 176 Cal.
App.2d 719 [1 Cal.Rptr. 500].)

Defendants needed money to complete the acquisition of the
land and in return for an immediate initial contribution by
plaintiffs they were willing to negotiate terms of a joint
association to develop the property. ▇▇▇ The main letter
of July 14 (Ex. 1), was prepared and typed by plaintiff
Malat; it provides for the payment by plaintiffs of $105,000
within one month and constitutes a preliminary "outline" of
certain general terms of a proposed future contract, reserving
various essential terms to later mutual agreement and their
agreements to a formal writing to be prepared by a lawyer
of their mutual choice under their direction. It reads in part:
"The purpose of this letter is to outline our understanding
and agreement with regard to his (plaintiffs') participation
with us (defendants) in the ownership, development, improve-
ment, sale, and any and all other transactions regarding the
subject property. Our mutual association in this respect may
be by way of a partnership, joint venture, corporation or cor-
porations, or such other entity or entities as may be mutually
agreeable." It provides for the payment of $105,000, outlines
certain general terms of the proposed venture and others to
be decided in the future, and concludes: "If the above outlines
our mutual understanding in this regard please so acknowl-
edge as provided below. Thereupon under our mutual direc-
tion our agreements in this regard shall be reduced to a more

formal writing and form by an attorney to be mutually agreed upon between us.'' While the last sentence does not specifically say that the parties shall not be bound until a writing is executed, the whole tenor of the letter is one of incompleteness pending payment of the money, further agreement on essentials, consultation with a lawyer and reduction of the various agreements to formal writing. The letter leaves many essential terms of their proposed business venture for future agreement—the nature of their mutual association (partnership, joint venture, corporation or other entity) ; the manner and form of transfer of defendants' ''options and vestings'' in the property; the maximum cash contribution by each party; the nature of the development of the land; et cetera. Further, the use of the term ''agreements'' in the letter contemplates other understandings than that therein outlined such as—prior oral agreements, subsequent writings (Exs. 2, 7) and later agreements on essential terms reserved for future determination.

And certain testimony (believed by the trial court) reveals the clear understanding of the parties that the proposed agreement would not be complete and binding until reduced to formal writing. Carol D. Heers told plaintiff Lesser on July 14 he would not sign the letter (Ex. 1) unless his attorney looked at it; Lesser replied that an attorney was not necessary at this time because there was no binding agreement and would be none until they ''mutually agreed after the attorneys had drafted formal documents''; and he told Lesser their attorney would be Clifford Jones of Las Vegas and the letter was not ''acceptable'' until the ''binding agreement'' was drawn. Harold Heers testified to much the same and it was he who asked for the clause providing that an attorney would draw up the final agreements; Lesser told defendants the letter was not a ''binding agreement.'' Charles Heers testified that they told plaintiffs that ''this (Ex. 1) was not any formal agreement; this was just a letter of understanding to serve until they put the money up and we could mutually agree with [sic] attorney in Las Vegas it would be our mutual understanding at that time, and it was not a formal agreement or anything like that.'' Plaintiffs Lesser and Malat denied all such statements. ▮ Conflict in the testimony was resolved by the lower court which, as it had a right to do, accepted the defendants' version of what was said; we are bound by its determination. (*Campbell* v. *Taylor*, 189 Cal. App.2d 236 [11 Cal.Rptr. 271].)

██ Nor does the advancement of certain funds by plaintiffs prior to August 14 evidence the existence of a binding contract. The second letter of July 14 (Ex. 2), supplemental to the first, provided for an advance on the $105,000, and of it, plaintiffs paid $10,000. This letter recognized the first (Ex. 1) to constitute no more than an "outline" of terms, some to be agreed upon, and later all to be reduced to writing; but more important, it reveals defendants' immediate need for money which they had to have before proceeding further. It provides for an advance of funds prior to August 14 pending negotiations and in reliance upon consummation of the final agreement. Preliminary only, if plaintiffs defaulted the balance the sum advanced was to be returned to them and the letters (Exs. 1, 2) cancelled. ██ The advancement of funds while negotiations are pending in reliance upon the future acceptance and confirmation in writing of a proposal does not evidence the existence of a binding contract. (Las Palmas Winery & Distillery v. Garrett & Co., 167 Cal. 397 [139 P. 1077]; Mercantile Trust Co. v. Sunset Road Oil Co., 176 Cal. 451 [168 P. 1033].)

██ Moreover, the letter of August 10, 1953, (Ex. 7), signed at the request of plaintiffs, clearly shows that the letters of July 14 (Exs. 1, 2) were not intended to constitute a binding contract. Prepared by plaintiff Malat, the letter commences: "In line with our letter of agreement of July 14, 1953, and our previous understandings and agreements relative to our partnership, it is agreed between us. . . ." (emphasis added); and thereafter recites substantial changes in the proposed terms set up in the July 14 letter. These changes all too well indicate that the letter of July 14 was never intended to be the final memorial of the agreement of the parties. Carol D. Heers testified that prior to signing the letter of August 10 (Ex. 7) he inquired if it meant there was to be no binding agreement until drafted by a lawyer; Lesser replied: "That's correct, there will be no binding agreement until those agreements take place between your lawyer and ours. All you will have to do is give us back our money if we fail to do anything along the line." On August 10 Lesser told Harold he did not know "what form the venture should take until he heard from his C.P.A. in Pennsylvania"; and either Malat or Lesser said the agreement was not binding Again plaintiffs denied such statements.

██ Relative to the terms essential to an enforceable contract, their reservation for future determination consti-

tuted the letter of July 14 (Ex. 1) no more than an agreement to make a contract. ". . . if an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since either party by the terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise." (*Ablett* v. *Clauson,* 43 Cal.2d 280, 284 [272 P.2d 753]; *Autry* v. *Republic Productions, Inc.,* 30 Cal.2d 144 [180 P.2d 888]; *Vangel* v. *Vangel,* 116 Cal.App.2d 615 [254 P.2d 919]; *Howard* v. *Burrow,* 77 Cal.App. 4 [245 P. 808].) "If the document or contract that the parties agree to make is to contain a material item that is not already agreed on no contract has been made; and the so-called 'contract to make a contract' is not a contract at all." (1 Corbin on Contracts, pp. 67-68; *Myers* v. *Gager,* 175 Cal.App.2d 314 [346 P.2d 251].)

Those terms left unsettled by the parties in the letter of July 14 (Ex. 1) are vital to an enforceable contract. The form of entity the proposed venture is to take *is* material; important to the parties are the advantages and disadvantages of the various types of mutual association mentioned in the letter—rights and liabilities, credit rating, formality of creation, tax consequences, et cetera. Not reasonable is appellants' claim that the letter of July 14 (Ex. 1) created a joint venture, which later may take the form of a corporation, for the language spells out their understanding that while their business enterprise in the purchase and development of the land may be by way of several specified forms of mutual association, whatever form, initial or otherwise, their participation is to take it must be thereafter mutually agreed upon by the parties before any entity can come into existence. Although the letters employ the terms "joint venture" and "partnership," we agree with appellants that whatever appellation the parties may have given their association for the purpose of reference it is in fact the nature of the relationship, if any, intended or actually created, rather than the title which controls. (*Constans* v. *Ross,* 106 Cal.App.2d 381 [235 P.2d 113].) Among other essentials left open to future agreement by the letter of July 14 is the form of ownership of each 50 per cent interest in defendants' "options and vestings" in the subject property; there is no agreement concerning how these interests shall be transferred or held—joint tenancy, tenancy in common, shareholder's equity in a corporate asset, interest in a partnership asset, et cetera—and

defendants could hardly be expected to transfer their "options and vestings" to 200 acres of land until this is determined; without doubt this was one of the matters about which they wanted legal advice before making a final contract. Nor did the parties agree upon the ultimate total contribution of each or how or when the amount would be determined and paid. (*Klein* v. *Markarian*, 175 Cal. 37 [165 P. 3].) Certainly plaintiffs would be expected to make a greater financial outlay for 50 per cent ownership of 200 acres of land than the $75,000; indeed, the letter of July 14 (Ex. 1) provided for $105,000 and "any subsequent and additional funds (over and above the $105,000) . . . in amounts to be mutually agreed upon between us." Further the nature of the development of the 200 acres, the very subject of the venture, is without agreement; true the improvement and development of the land contemplated the construction of "buildings of various types which it is proposed should be either sold or rented" (letter of July 14 (Ex. 1)), but there is no understanding of the kind of improvements, type or number of buildings to be constructed, proposed cost, or the nature of the development. (*Pacific Hills Corp.* v. *Duggan,* 199 Cal.App.2d 806 [19 Cal. Rptr. 291].)

Appellant's briefs are replete with ponderous citations of various elementary phases of general contract law, with none of which we disagree. Also cited are numerous authorities pointing up general principles relating to the creation and nature of a joint venture. Most of these cases are not controlling for they, unlike the situation at bar, deal with agreements clearly creating a joint venture, or they presuppose the existence of such an entity.

Certain testimony was admitted in connection with the letter of July 14 (Ex. 1) to shed light on whether a final binding agreement therein existed or constituted "merely an agreement to agree in the future," and to determine the meaning of the last paragraph therein which the court declared to be ambiguous; and in connection with the letter of August 14 (Ex. 7) to determine the meaning of the phrase "our previous understandings and agreements," the court having found it to be ambiguous. Briefly the testimony of defendants was to the effect that at the meetings of July 14 and August 10, before the letters were signed, plaintiffs assured them they were not meant to constitute a final binding contract until a formal writing reducing their understandings and agreements was prepared by a lawyer mutually agreed upon, and

executed. No such document was ever prepared. Appellants argue at length that the language of the writings is clear, thus it was a violation of the parol evidence rule to admit this testimony as it sought to contradict, vary and add new terms to the agreement; further, that nowhere therein was it agreed that the parties were not to be bound until execution of a formal writing, and the ''understandings'' and ''agreements'' referred to consist of those outlined in the letter of July 14 (Ex. 1).

While the letter of July 14 (Ex. 1) does not expressly say that the proposed agreement is not to be deemed complete until reduced to writing, neither does it provide that by its terms a binding contract arises even though the parties intend to later execute a formal document. Moreover, other language could hardly be construed contrary to an understanding of the parties that no final binding contract shall come into existence until certain unsettled essential terms are subsequently agreed upon and *all* of their agreements are reduced to final written form. Thus testimony concerning their understanding in this regard is not inconsistent with any term of the letter. ██ And it is the rule that it may be shown by parol evidence that a writing was not intended as a final act because it was not to become effective until some condition occurs—that the existence or efficacy of the instrument as a contract is dependent on a condition precedent, not inconsistent with its terms. (*Langan* v. *Langan*, 89 Cal. 186 [26 P. 764]; *Parker* v. *Meneley*, 106 Cal.App.2d 391 [235 P.2d 101]; *Fontana* v. *Upp*, 128 Cal.App.2d 205 [275 P.2d 164;] *Hanrahan-Wilcox Corp.* v. *Jenison Machinery Co.*, 23 Cal. App.2d 642 [73 P.2d 1241]; *Paratore* v. *Scharetg*, 53 Cal.App. 2d 710 [128 P.2d 560]; *Williams L.B. Organization, Inc.* v. *Winter*, 106 Cal.App.2d 604 [235 P.2d 407]; *Embassy Realty Associates* v. *Southwest Products Co.*, 126 Cal.App.2d 725 [272 P.2d 899]; *Campbell* v. *Taylor*, 189 Cal.App.2d 236 [11 Cal. Rptr. 271].) ██ Inasmuch as the letter of July 14 (Ex. 1) does not include any term inconsistent with the oral condition precedent (that the letters would not constitute a binding contract until reduced to formal writing) the admission of testimony to establish this was proper (*Whiteman* v. *Leonard Realty Co.*, 189 Cal.App.2d 373 [11 Cal.Rptr. 211]; *Fontana* v. *Upp*, 128 Cal.App.2d 205 [275 P.2d 164]; *Severance* v. *Knight-Counihan Co.* 29 Cal.2d 561 [177 P.2d 4, 172 A.L.R. 1107]; *Murphey* v. *Smith*, 104 Cal.App.2d 857 [15 Cal.Rptr. 285]); this was not employed to vary or defeat the terms of

any agreement—it was used only to determine whether one was in existence.

As to the declared ambiguities it is manifest in the letters themselves that the parol evidence rule is not a bar to the admissibility of the challenged testimony. This issue faced the trial court—do the "understandings" and "agreements" mentioned in the letters of July 14 and August 14 include only those outlined therein or do they contemplate, in addition, prior oral and subsequent written agreements and those terms to be later mutually agreed upon? If they include the latter, then the letters do not constitute the final memorial of the parties' agreement and no binding contract is in existence.

In construing a contract, whether an uncertainty or ambiguity exists is a question of law and the lower court's determination is not binding on appeal (*Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128 [48 P.2d 13]); however we agree with the trial judge's declaration thereon and deem the admission of parol evidence to explain these terms to be proper. (*Back* v. *New York Merchandise Co.*, 196 Cal.App.2d 434 [16 Cal.Rptr. 591].) Then "it is primarily the court's duty to construe it [the writing] after a full opportunity for the parties to produce evidence of the facts, circumstances, and conditions surrounding its execution and the conduct of the parties relative thereto. . . ." (*Spector* v. *National Pictures Corp.*, 201 Cal.App.2d 217, 223 [20 Cal.Rptr. 307]; *Beatty* v. *Oakland Sheet Metal Supply Co.*, 111 Cal.App.2d 53 [244 P.2d 25]; *Nuland* v. *Pruyn*, 99 Cal.App.2d 603 [222 P.2d 261].) After hearing the testimony the trial court accepted defendants' version of what occurred and found accordingly; we will accept a reasonable interpretation of a writing adopted by the trier of fact and not substitute our own therefor. (*Back* v. *New York Merchandise Co.*, 196 Cal.App.2d 434 [16 Cal. Rptr. 591]; *Walsh* v. *Walsh*, 18 Cal.2d 439 [116 P.2d 62]; *Portola Dev. Co.* v. *Board of Trustees*, 203 Cal.App.2d 129 [21 Cal.Rptr. 432].)

While the lower court's judgment decreed that no final binding or complete contract was ever made by the parties and no joint venture or partnership was ever consummated, in the alternative it also decreed that even if a joint venture, partnership or other contractual relationship was created that the same was lawfully terminated by reason of plaintiffs' failure to perform their obligations under the letters of July 14 and August 10, 1953. The trial court found that plaintiffs did not pay the $65,000 on or before August 14, and other facts

relative to their default. As their second main issue appellants contend that their tender of the $65,000 check was timely and sufficiently made and wrongfully refused; and that the findings to the contrary are unsupported by the evidence. Further they argue that even if their tender was not timely, that any objection thereto was waived by defendants' subsequent acts and conduct. Many side issues are raised by appellants and they engage in protracted discussions of the evidence. However, having heretofore concluded that no final binding contract existed between the parties and no joint venture or other such relationship was created, we perceive no need to concern ourselves with the problems now raised by appellants. Nor do we feel constrained to discuss appellants' final argument that the findings and judgment are contradictory and irreconcilable on material issues and hence prejudicially erroneous. They are, as conceded by appellants in their opening brief (p. 74), in the alternative, and the court's language in its findings and judgment reflects its alternate position; as such they are not inconsistent with other findings. The court simply found there was no binding contract or joint or other venture and, in the alternative, even if they existed appellants failed to perform; alternative findings are not improper. (*Hunter* v. *Sparling,* 87 Cal.App.2d 711 [197 P.2d 807] ; *Knapp* v. *City of Newport Beach,* 186 Cal.App.2d 669 [9 Cal.Rptr. 90].)

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied December 4, 1962, and appellants' petition for a hearing by the Supreme Court was denied January 3, 1963.